INCE v. STATE.

Opinion delivered June 17, 1905.

1. INSTRUCTION—SINGLING OUT EVIDENCE.—It was not error to refuse to instruct that "if no motive be shown, it is a circumstance in favor of the defendant's innocence, to be considered by the jury," as it would have been improper to single out the absence of motive in this way, especially where the language of the instruction was not guarded by a further instruction that the jury are the exclusive judges of the weight and sufficiency of such testimony. (Page 421.)

2. VERDICT—FORM.—It was not error to refuse to accept a verdict which found defendant guilty, but demanded an investigation into his sanity. (Page 422.)

3. APPEAL—WAIVER OF EXCEPTION.—An exception to the admission of testimony which is not brought forward in the motion for new trial will not be considered on appeal. (Page 422.)

4.  JURY—SEPARATION.—The fact that one of the jurors left the jury box
    during the process of selecting the jury, but after he had been
    selected as a juror, and occupied for a short while a seat among the
    audience in the presence of the court, was not such a separation as
    cast upon the State the burden of showing that he was not exposed
    to improper influence.  (Page 422.)

5.  MOTION IN ARREST OF JUDGMENT—EFFECT.—A motion in arrest of a
    judgment of conviction which does not state any of the statutory
    grounds for arresting the judgment, but alleges that defendant was
    insane at the time of trial or sentence, should be treated as a motion
    to stay sentence, and the court should impanel a jury to inquire into
    defendant's mental condition at such time.  (Page 423.)

6.  INSANITY—RES JUDICATA.—The fact that defendant pleaded as defense
    to an indictment for murder that he was insane at the time the
    alleged offense was committed, and that a verdict of guilty was
    returned, does not bar a subsequent plea that he was insane at the
    time of trial or sentence.  (Page 423.)

7.  TRIAL—REMARKS OF JUDGE.—The jury in a murder case found de-
    fendant guilty of murder in the first degree, but demanded an investi-
    gation into his sanity, but the court informed the jury that it would
    not be proper to attach any condition to the verdict, that in case
    of conviction the defendant could not be executed for more than thirty
    days, and that defendant's attorneys would look after his interests.
    These remarks of the court were subsequently withdrawn, and the
    jury found defendant guilty unconditionally.  There was strong evi-
    dence of insanity.  *Held* that defendant was entitled to a new trial.
    (Page 424.)

Appeal from Yell Circuit Court, Danville District; WILLIAM
L. MOOSE, Judge; reversed.

### STATEMENT BY THE COURT.

The defendant, James W. Ince, was indicted, tried and con-
victed of the crime of murder in the first degree for killing his
wife and three children.  Counsel was appointed by the court
to conduct his defense, and a plea of insanity was interposed.

The fact that he committed the homicide is not disputed, and
the proof discloses a most shocking deed.  According to de-
fendant's confession, he arose at an early hour in the morning,
and with an ax killed his wife and their three small children, the
youngest being an infant in the arms of the mother.

The particular phase of insanity with which the defendant
is claimed, by his counsel, to be afflicted is homicidal mania,

which is defined to be a deranged condition of mind whereby there is an irresistible impulse to commit homicide. It is proved that the defendant's father is so afflicted, and is now confined in an insane asylum in another State. A great deal of other testimony was introduced, *pro* and *con,* as to the mental condition of the defendant at the time of the homicide.

The court refused to give the following instruction asked on behalf of the defendant, and such refusal is assigned as error:

"3. While in case of homicide the jury may properly consider the motive which prompted the act itself or the want of motive, if no motive be shown, it is a circumstance in favor of the defendant's innocence, to be considered by the jury."

The jury, after deliberating several hours, returned into court with the following verdict: "We, the jury, find the defendant guilty of murder in the first degree, but demand that a thorough investigation by experts be made into defendant's sanity —sixty days' limit.

The court refused to accept this verdict, and said to the jury: "Gentlemen, the verdict is not in usual or proper form. It will not be proper to attach any condition or limitations to the verdict. In case of conviction, the defendant can not be executed for more than thirty days, and the supposition is that defendant's attorneys will look after his interest in all proper ways."

Counsel for defendant excepted to this language, and the court thereupon said further to the jury:

"Gentlemen, upon reflection, I desire to withdraw what I said in regard to defendant's attorneys looking after defendant's interest. It would be improper for me to say anything to you that could be construed as an inducement or argument for you to find the defendant either guilty or innocent, and I do not mean to do so. Your verdict should be upon the facts and evidence before you now, and with no reference to any step that may or may not be taken in the case hereafter, and your verdict must not contain any conditions."

The jury then retired, and in a short time returned a verdict of guilty as charged in the indictment.

Before sentence was pronounced on the defendant, his coun· sel filed and presented to the court a motion in arrest of judgment,

setting forth as grounds "that the defendant is now insane."

The court overruled this motion, and sentenced the defendant in accordance with the verdict.

*Sam T. Poe, Tom D. Patton* and *Priddy & Chambers,* for appellant.

The motion for continuance should have been granted. Const. Art. 11, § 10; 50 Ark. 161. The court's remarks to the jurors who were being examined were improper. 45 Ark. 165. The closing remarks of the prosecuting attorney were improper. 58 Ark. 474; 75 Ark. 67. The court invaded the province of the jury. 60 Ark. 49; 49 Ark. 153; 34 Ark. 693; 43 Ark. 289; 44 Ark. 115; 45 Ark. 165. It was error to permit the jury to separate. 12 Ark. 782; 75 Ark. 67.

*Robert L. Rogers, Attorney General,* for appellee.

Insanity will excuse a crime only when it is made to appear affirmatively by evidence fairly · preponderating. 40 Ark. 522; 54 Ark. 602.

McCULLOCH, J., (after stating the facts.)   1. Counsel urge that the court erred in refusing the third instruction asked by defendant, that, "if no motive be shown, it is a circumstance in favor of the defendant's innocence, to be considered by the jury." In criminal prosecutions it is competent to introduce testimony of facts and circumstances tending to show a motive or absence of motive for the commission of the crime by the accused, as tending, with more or less force, to establish his guilt or innocence. It is not improper for the court to instruct the jury that they may consider such testimony for that purpose. But this should be done in connection with all other facts and circumstances proved, and it is not proper for the court in the instructions to single out the proof of motive or absence of motive and tell the jury that they may consider that as a circumstance in favor of his guilt or innocence. Especially is this true where the language of the instruction is not guarded by a further instruction in the same connection that the jury are the exclusive judges of the weight and sufficiency of such testimony. By giving the instruction in the form asked, the court would have placed undue weight upon the proof of absence of motive, thus invading the province of the jury. It would have been error for the court

to single out the question of motive for the crime and point to it as a proper subject of consideration as an evidence of defendant's guilt, and it would have been equally erroneous and improper to point to the want of motive as an evidence of his innocence. We find no error in this ruling of the court.

Nor do we find any prejudicial errors in the remarks of the court to the jury in declining to accept the conditional verdict offered. The learned judge should have contented himself with declining to accept the imperfect verdict, without any remarks or reference to the course which the defendant's counsel could take in the future; but we think that there is nothing in his remarks calculated to prejudice the rights of the defendant before the jury. Especially is this true in view of his remarks to the jury a few minutes later.

2. Counsel press, as grounds for reversal, other alleged errors of the court, some of which were not preserved in the motion for new trial. This is true of the exception to the testimony introduced by the State showing, as a motive for the crime, the ill-will of defendant towards his wife's father. It is urged that this was too remote to serve as a motive, but the exception to this ruling of the court is not brought forward in the motion for new trial.

It is contended that certain members of the trial jury were allowed to separate from their fellow jurors during the progress of the trial, but we think that the testimony introduced on the hearing of the motion for new trial shows that these jurors were not subjected to any improper influences. One of the jurors is shown to have left the jury box during the progress of selecting the jury (after he had been accepted as a juror) and occupied for a short while a seat among the audience. This was before the completion of the jury and presentation of the case, and it is not shown that this juror was subjected to any improper influence. The separation of the juror at that time and under those circumstances was not sufficient to cast upon the State the burden of showing that he was not exposed to improper influence. This occurred in the presence of the court and whilst the jury was being selected, and we can not say that he erred in his conclusion that the rights of the defendant had not been prejudiced by this indiscretion on the part of the juror..

3. Appellant's motion in arrest of judgment on the ground of present insanity did not state statutory grounds for arrest of judgment, but should have been treated as a motion to stay sentence, and, as such, the court erred in overruling it. The statute reads as follows: "He may also show that he is insane. If the court is of opinion that there is reasonable ground for believing he is insane, the question of his sanity shall be determined by a jury of twelve qualified jurors, to be summoned and impaneled as directed by the court. If the jury do not find him insane, judgment shall be pronounced. If they find him insane, he must be kept in confinement, either in the county jail or lunatic asylum, until, in the opinion of the court, he becomes sane, when judgment shall be pronounced." Kirby's Digest, § 2240. The fact that a plea of insanity has been interposed as a defense to the crime charged in the indictment and a verdict of guilty returned does not bar a plea of insanity at the time of the trial or at the time of sentence. Either plea may be offered after trial and verdict. The verdict of the jury was conclusive only of his sanity at the time of the commission of the homicide. *State v. Helm,* 69 Ark, 167, 61 S. W. 915; *Linton v. State,* 72 Ark. 532, 81 S. W. 608.

Upon suggestion of the insanity of appellant, and reasonable grounds appearing for believing him to be insane, the court should have impaneled a jury to inquire into his condition. The testimony as to the mental condition of appellant at the time the homicide was committed was conflicting, though none of the testimony was directed to his condition at the time of the trial and verdict. The jury, by the verdict first brought into court, demanding that an "investigation by experts be made into defendant's condition," demonstrated that after hearing all the evidence they had some misgivings as to his sanity, though a short time later they said by their verdict that they believed beyond a reasonable doubt that he was sane when he committed the homicide. We think, from this, that there were sufficient grounds for believing him to be insane, and that the court should have impaneled a jury to inquire into his condition.

Finding no prejudicial error in the trial, the verdict will not be disturbed, but the cause is reversed and remanded, with

directions to the court before sentence to impanel a jury to inquire into the sanity of appellant.

BATTLE, J., dissents, holding that the case should be reversed and remanded for a new trial.

## ON REHEARING.

### Opinion delivered July 15, 1905.

McCULLOCH, J. Learned counsel for appellant, in a petition for rehearing, insist that the trial judge, in telling the jury, when the conditional verdict was brought into court, that the defendant could not be executed within thirty days, "and the supposition is that defendant's attorneys will look after his interest in all proper ways," committed error to the prejudice of the defendant, which was not removed by the subsequent withdrawal of the remarks. Counsel argue with much force that the jury, from this statement, notwithstanding the subsequent withdrawal of the statement, were led to believe that the question of the defendant's mental capacity to commit the crime would be taken care of later by counsel, and that the verdict of conviction would not be conclusive of that question. They argue that the condition attached to the verdict offered had reference to the mental capacity of the defendant at the time the homicide was committed, and not to his present mental capacity, and that the jury, by attaching the condition, expressed a doubt as to his mental capacity when he committed the homicide.

We adhere to the conclusion, formerly rendered, that the remarks of the court, taken as a whole, were not calculated to prejudice the rights of the defendant before the jury. Still, after a careful examination of the record, we are impressed with the belief that the jury, in attaching the condition to this verdict, meant to express a doubt as to the mental capacity of the defendant to commit the crime, and to require a further investigation of that question, and we do not feel sure that, when this unconditional verdict was subsequently returned, the jury had been made to understand that such verdict was conclusive of that question. There is considerable testimony tending to sustain the plea of insanity. The peculiar atrocity of the act, its inexcusability, the total absence of provocation or motive, the conduct

of the accused for a few weeks before the homicide, the fact that his father was shown to be afflicted with the homicidal mania, and the opinions of several physicians and an expert of great experience in the treatment of diseases of the mind, all tend with much force to show that it was not the act of a sane man. We do not mean to say that the evidence is insufficient to sustain the verdict of the jury on this question of the defendant's mental capacity to commit the crime; but the evidence in support of the plea is of such persuasive force, taken in connection with the condition attached to the verdict, implying a doubt of defendant's sanity, that we are not content to allow the verdict and death sentence to stand. No harm can result from the delay of another trial, and we are constrained to believe that a due regard to justice demands it. The defendant made full confession of the homicide, and there is no probability of the evidence being lost on account of the delay of another trial. The case rests solely upon the question of the defendant's sanity.

The petition for rehearing is granted, and the cause is reversed and remanded for a new trial.

RIDDICK, J., concurs.

BATTLE, J. I concur as to the judgment of the court, but not as to the reasons given.

The jury, after being out some time, returned into court a verdict which, I think, indicated that they had not agreed as to the sanity of the appellant at the time of the commission of the offense with which he was charged. The court then said to them: "Gentlemen: The verdict is not in the usual or proper form. It will not be proper to attach any condition or limitation to the verdict. In case of conviction, the defendant can not be executed for more than thirty days; and the supposition is that defendant's attorney will look after his interest in all proper ways." Appellant excepted to the last remark. The court withdrew that remark, but did not correct or explain it, and left the impression made by it remaining in full force. The result was the jury returned a verdict in about twenty-five minutes in which they found the defendant guilty of murder in the first degree, as charged in the indictment. I think the remark was prejudicial, and that appellant is entitled to a new trial.

WOOD, J., concurs with me.

HILL, C. J., (dissenting.) My first impressions of this case were that it should be affirmed in entirety, but after consultation and consideration I concluded that the disposition made of the case on the hearing was the right decision to render. That decision gave full weight to the first verdict of the jury demanding an inquiry into the sanity of the defendant, and gave full weight to the second verdict, which found he was sane when he committed the crime. The evidence is ample to sustain the verdict of guilty, and I can see no reversible error in any of the proceedings in the trial, and to direct an inquiry into the present sanity or insanity of the defendant is the utmost which any occurrence at the trial demands, in my opinion; and therefore I dissent from the decision granting a new trial.