---

(No. 13830.—Reversed and remanded.)
FRANK DRDA, Appellee, *vs.* JOSEPH C. DRDA *et al.*
Appellants.

*Opinion filed June 22, 1921.*

1. DEEDS—*where father and son have the same name the law presumes deed to have been made to father.* Where a father and son have the same name and a deed is made to one or the other the law will presume that the father was intended as grantee, but the *prima facie* case made by such presumption may be overcome by evidence that the son was intended, and in such case the arbitrary character of the presumption ceases and the conflicting evidence is to be weighed and the presumption considered only with whatever probative or evidential force it may have.

2. EJECTMENT—*burden is on plaintiff to prove deed was made to him and not to his father, who had the same name.* In an action of ejectment brought by a son against the executors and beneficiaries under the will of his father on the theory that the deed to

the land in suit was made to him and not to his father, who had the same name, the burden is on the plaintiff to establish his title.

3. INSTRUCTIONS—*instruction should not direct jury's attention to single item of evidence.* An instruction should not direct the jury's attention to a single item of evidence which in itself is not conclusive, as the effect is to destroy the aggregate effect of all the evidence.

APPEAL from the Circuit Court of Madison county; the Hon. LOUIS BERNREUTER, Judge, presiding.

J. F. EECK, and BURTON & BURTON, for appellants.

GEERS & GEERS, and HENRY B. EATON, (JESSE R. BROWN, of counsel,) for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The appellee, Frank Drda, brought this suit in ejectment in the circuit court of Madison county against the appellants, executors and beneficiaries under the will of Frank Drda, Sr., deceased, to recover possession of the north half of the northeast quarter of section 32, township 6, range 5. The case was tried, resulting in a verdict for the appellee, and a new trial was granted. At the second trial there was a like verdict for the appellee, on which judgment was entered, and an appeal was taken to this court.

The common source of title was Edward M. Olive, who conveyed the land by deed on December 10, 1895, to Frank Drda. The plaintiff and his father had the same name, and the sole issue was whether the conveyance was to the plaintiff or his father. William Andrews negotiated the purchase of the land from Olive, intending to buy it himself if he could get financial aid. He obtained a price of $1200, of which $400 was to be paid in cash and the purchaser to assume a mortgage of $800. Andrews could not raise the cash payment, and, thinking to make something by finding a purchaser, went to see the plaintiff, who occupied

a farm of 240 acres belonging to his father, to see whether the plaintiff would buy the land. The plaintiff agreed to buy it and pay Andrews for making the deal by giving a cow and $15, and said that he would have to see his father, who owed him some money. After some trips to see his father the plaintiff said he would take the land, and a day was agreed upon when the parties were to meet at Edwardsville. At the appointed time Andrews, Olive, the plaintiff and the plaintiff's father met at Edwardsville, and Andrews told Olive that he could not buy the land but had a man who would take it off his hands, to which Olive agreed. They all went to a bank, and Greenwood, the cashier, wrote the draft of the deed and Olive executed it. Greenwood took the acknowledgment and handed the deed over, with the money, to the plaintiff, who gave the money to Olive. Andrews left the bank before the deed was delivered and afterward saw plaintiff's father, who refused to let him have the cow but took money out of a tobacco sack and gave him $20. Andrews and Olive understood that the plaintiff was the purchaser and was intended as the grantee in the deed. After the delivery of the deed the father took it and delivered it to the recorder to be recorded and after it was recorded he took it home and placed it in his safe. The father died on April 9, 1918, and the deed was found in his safe, with tax receipts for the land, the mortgage for $800 and the paid note which was secured by it. At the time of the purchase the plaintiff owned 40 acres of land not adjoining the land in question and occupied as tenant of his father 240 acres adjoining this tract. After the purchase the land was occupied, with the 240 acres, by the plaintiff, and the evidence for the defendants was that he paid crop rent until 1906 and for nine years thereafter was to pay cash rent for all of the land except the 80,—a part of the 240 acres,—on which the buildings were located, and was to keep up the repairs on them and pay the taxes. At the time of the purchase plaintiff's father held his note for

$900, dated February 2, 1893, and it has never been paid. On July 29, 1916, the father made his will, and by the ninth clause he devised to the executors the 80 acres in question in trust, to sell and convey the same in fee simple either at public or private sale, and after the payment of costs, expenses and taxes, to pay the proceeds to his daughter, Mary M. Drda, his daughter-in-law, Emma Drda, and his son Tony Drda, in the amounts and proportions therein stated. By the will he gave to plaintiff the amount which might at the time of his death be due on the note for $900 made in the year 1893, stating that it was his intention that the note, with interest, should be considered as paid, and by reason of what he had already given the plaintiff and what he had done for him in the past he made no other bequest or devise to him. The note was unpaid at the father's death. It was torn in two and on the back of it there were ten indorsements, with dates from 1894 to 1910, of interest paid to date by taxes. The plaintiff paid the taxes on all the land and the receipts were found among the papers of his father after his death.

The claim of the plaintiff was that his father owed him money at the time of the purchase, and that it was money collected from his father, due plaintiff, that was used in making the cash payment of $400. Greenwood, the cashier, was dead and that source of information as to the money was lost. Martin Drda, a brother of the plaintiff, testified that previous to the time the plaintiff went to live on his father's farm, before the purchase of the land in question and when he was unmarried, he worked on the Wabash railroad section at $1.10 a day and overtime and was boarding with the section foreman; that he heard a conversation between the father and plaintiff a day or two before the deal for the land was closed; that the father said Frank had come there to get some money; that he owed him money and he had been keeping it for him from the time he had been working on the Wabash, and that about

the month of December, 1895,—which was the month when the deed was made,—he heard his father say that the plaintiff had bought the 80 acres of land. On the other hand, Tony Drda testified that he was at home when the plaintiff came to see his father about purchasing the land; that the plaintiff told how much it could be bought for and the father told the plaintiff that he would buy the land; that the plaintiff said his father would have to give him $30 for the agent's trouble, and the father gave the plaintiff $30 to give the agent and gave the plaintiff $20 for his trouble; that the plaintiff said that he could get the land for his father, and the father said, "All right; go and make the deal;" that the day the father went to Edwardsville to make the deal he took $400 with him from home, and that after the father's death the plaintiff asked him to sell him the 80 acres. The plaintiff made a note to his father on March 21, 1916, for rent of the land occupied by him, and the evidence was that it included this 80-acre tract. The note was for $3500, due one day after date, and was unpaid at the death of the father. The note was given in settlement in the office of Judge Benjamin R. Burroughs, who testified that he went to see the plaintiff and prevailed upon him to come to Edwardsville and make a settlement with his father; that the plaintiff was to pay his father $500 per year cash rent for 240 acres, including the 80 in question, and was to keep up the repairs and pay the taxes on the 80, on which the buildings were located; that the rent was due for the period of nine years, amounting to $4500; that plaintiff complained of having had two bad crop years and that a deduction of $1000 should be made; that the father deducted $1000 and the plaintiff then gave the note; that at the same time the father said to the plaintiff he understood the plaintiff had been claiming some of the land up there, and the plaintiff said it was not true and his father knew he only owned the 40 acres, which was a different tract from this; that the father wanted the plain-

tiff to sign a statement that he did not own the land, but the plaintiff said he did not want to give him a paper and it was enough to acknowledge before the witness that he did not own the land, and gave him the note for rent. The witness made a written memorandum at the time, which recited that it was made at the request of the father, and it was produced at the trial. The tax receipts showed that most of the time the taxes were paid to the town collector by "Frank Drda," but some of them showed payments by "Frank Drda, Sr." Several witnesses, most of whom would not be affected in any way by the result of the trial, testified to statements of the plaintiff inconsistent with his claim of ownership, all of which he denied having made. He denied that he made the statement testified to by his brother Tony that he asked his father to buy the Olive 80 acres of land; denied that he made any statement to the surveyor, Oswald, to the effect that his father owned the Olive 80 or that all the land Oswald was surveying except the 40 acres belonged to his father; denied that he told the witness Miksick that he was renting 320 acres of land from his father and that he only owned the 40 acres not a part of the 80; denied that he told Peter Watts, the constable, who foreclosed a mortgage for rent, that he had no interest in the Olive 80; denied that he told the witness O'Neil that he would not have bought the 40 acres that he owned if he had not thought that he could get more land there; denied that he told his brother Joseph, one of the executors, he would like to buy the Olive 80 from him; denied that he told Joseph Drda that any of the rent crops was raised on the Olive 80, and denied stating in the presence of Judge Burroughs anything to the effect that the Olive 80 did not belong to him.

There is a legal presumption where a father and son have the same name and a conveyance of land is made, leaving it uncertain on the face of the deed whether the grant was intended to be made to the father or to the son,

that the father was intended as grantee in the absence of proof to the contrary. (*Graves* v. *Colwell,* 90 Ill. 612; *Doty* v. *Doty,* 159 id. 46.) A *prima facie* case made by the legal presumption may be overcome by evidence that the son was intended, and if that is done the arbitrary character of the presumption ceases and the conflicting evidence is to be weighed and the presumption considered only with whatever probative or evidential force it may have. There was some evidence tending to overcome the presumption, consisting of the testimony of the brother Martin and the understanding of Olive and Andrews when the deal was made that the plaintiff was buying the land. That understanding arose from the fact that the plaintiff conducted the negotiations and nothing was said that indicated that he was not the purchaser; but that inference was not necessarily inconsistent with the fact that the plaintiff was acting for his father, and the conduct and circumstances of the parties afterward were wholly inconsistent with any theory that the plaintiff was the purchaser. The father paid Andrews and refused to permit him to have the cow, took and kept the deed, paid the mortgage, rented the property for a long period of years, and never acknowledged any right or title in the plaintiff after the purchase. It is apparent that the kind and quality of the evidence that the father was not indebted to the plaintiff at the time of the purchase is far superior and more convincing than anything offered by the plaintiff. The undisputed fact that the father had the note of the plaintiff for $900, made more than two years before the purchase and which has never been paid, cannot be reconciled with the claim that the father was indebted to the plaintiff nor overcome by any inference of Andrews or Olive that the plaintiff was buying the land for himself. The burden of proof was upon the plaintiff to establish his title, and the balance of the evidence, both written and oral, was against him.

The court gave for the plaintiff this instruction:

"The court instructs the jury that even though you may believe from the evidence that the plaintiff in this suit was indebted to Frank Drda, Sr., at the time of his death that fact alone would not entitle the defendant to a verdict, finding the title and right of possession of the land in controversy in them."

The objection made to this instruction is, that it limited the indebtedness to the death of the father and drew the attention of the jury away from the fact that plaintiff owed the father a note of $900 at the time the Olive 80 was purchased, at which time it was claimed for plaintiff that the father owed him. The instruction was erroneous for those reasons, because it would naturally direct attention to the notes for $900 and $3500, and make the jury understand that the $900 note was not evidence as to who bought the land, when it was of the utmost importance on that issue. That note, with other facts, would raise an inference of the ultimate fact in issue; and furthermore, it is not proper to direct attention to a single item of evidence which in itself, alone, would not be conclusive. That might be done in any case as to every single item of evidence not conclusive in itself, with the effect to destroy the aggregate effect of all the evidence.

Another instruction told the jury that if the plaintiff showed a legal title to the premises in controversy then no equitable right in the defendants would bar the plaintiff's right of recovery. There was no claim by the defendants of any equitable right and no explanation of what rights were equitable or what were legal, and the instruction was erroneous because it would lead the jury to disregard the proof of possession of the papers, payment of the mortgage, the renting of the property, and other facts which they might believe showed only equitable rights.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*