RUTLAND *v.* P. H. RUEBEL & COMPANY.

4-6237                       154 S. W. 2d 578

Opinion delivered October 13, 1941.

*Rose, Loughborough, Dobyns & House,* for appellant.

*Henderson, Meek & Hall* and *Donham, Fulk & Mehaffy,* for appellee.

GREENHAW, J. The appellee in this case, a corporation, was engaged in the undertaking business in the city of Little Rock, its sole stockholders, officers, and directors being Alfred Leymer, his wife and his sister-in-law, Miss Ruebel. Leymer was secretary-treasurer and manager. The appellant was employed as an embalmer for appellant by Mr. Leymer in 1925. At that time another employee, Carl Vess, was assistant manager. In 1928 the said Carl Vess became totally disabled due to illness, which terminated his services for appellee. Thereupon the duties of Vess were delegated to the appellant.

The appellee carried an insurance policy with the John Hancock Mutual Life Insurance Company upon the life of Carl Vess for $10,000 with a total disability provision of $100 per month, which was paid to Vess while he was disabled. On December 18, 1928, a similar policy was issued by the same company for $10,000 on the life of the appellant, with total disability provisions and waiver of premiums in the event of total disability, the beneficiary being the estate of the appellant. On December 21, 1928, said $10,000 policy was duly assigned to the appellee, who thereby became the owner thereof and paid all premiums thereon until the appellant also became totally disabled in June, 1938. Appellant had been continuously employed by appellee since 1925, with the exception of about two weeks in January, 1930.

The insurance company began making payments on said $10,000 policy direct to the appellee in the sum of $100 per month about July, 1938. The appellee collected said monthly payments and in turn paid the amounts collected in 1938 to the appellant monthly. After handling the matter in this manner for about six months the appellee wrote the insurance company to pay these monthly disability installments direct to the appellant until further notice. Thereupon the insurance company paid the monthly disability installments due under said policy direct to the appellant throughout the year 1939. The

appellee in the early part of January, 1940, notified the insurance company to make no more payments to appellant, and to pay said monthly installments direct to it. This action on the part of the appellee in stopping the disability payments to appellant resulted in the appellant's filing suit against the appellee in the Pulaski circuit court. The case was tried by a jury, resulting in a verdict for the appellee signed by nine jurors, upon which judgment was entered for it, and from which is this appeal.

The complaint alleged the defendant was a corporation engaged in the undertaking business, that plaintiff was employed and began working for defendant in 1925 and remained in its employ with the exception of about two weeks in January, 1930, until June, 1938; that in December, 1928, the defendant, acting through its duly authorized officers, agreed as an inducement to plaintiff to continue in its employ that it would take out a policy of insurance in the amount of $10,000 on plaintiff's life; that said policy would contain provisions for the waiver of premiums and the payment of $100 per month in the event the plaintiff should become totally and permanently disabled; that the policy would be assigned to the defendant, but in the event of plaintiff's total and permanent disability the disability benefits collectible under the policy would be paid to the plaintiff as a consideration for past services; that plaintiff consented to continue in the employ of defendant and the policy was issued and assigned to the defendant, all in accordance with the agreement; that in January, 1930, the plaintiff went to New Orleans for a period of two weeks; that he returned to Little Rock and was informed by the defendant that the policy was still in force and that the disability benefits collectible thereunder would be paid to him if he would resume employment; that in consideration of that offer the plaintiff resumed his duties and worked until June 11, 1938, at which time, by reason of a serious heart malady, he was forced to retire from business; that in accordance with the terms of the agreement, which had been completely and fully performed on plaintiff's part, the defendant directed the insurer to pay

the disability benefits to the plaintiff, and such benefits were paid without interruption until the 17th of January, 1940; that since said date all payments made by the insurer have been appropriated by the defendant in violation of the contract, and plaintiff prayed judgment for the monthly installments collected by the defendant from January, 1940, to the date of trial.

The defendant in its answer admitted that plaintiff was employed in 1925 and remained until June 11, 1938, except for the short time that plaintiff was in New Orleans. It denied that it agreed as an inducement to plaintiff to continue in its employ to take out a policy of insurance; denied there was any agreement that the policy was to contain disability benefit provisions, and that benefits collectible thereunder would be paid to the plaintiff; admitted that plaintiff went to New Orleans, but denied when he returned to Little Rock he was informed that the policy was still in force, or that the defendant offered to continue it in force and pay the disability benefits to the plaintiff if he became disabled; denied that in accordance with the terms of the agreement the insurer was directed to pay the disability benefits to the plaintiff, or that it collected any disability benefits in 1940 in violation of the terms of the agreement. It alleged that the policy of $10,000 with provision for waiver of premiums and payment of $100 per month in the event of total disability was obtained and paid for by it upon the life of the plaintiff, but that said policy was the sole property of the defendant at the time it was issued, at the time of the assignment, and at all times thereafter, and that plaintiff never at any time had any interest therein; that when the plaintiff became disabled the defendant voluntarily, in order to assist the plaintiff, directed the insurance company to pay disability benefits to the plaintiff until such time as the defendant notified it not to do so; that it notified the insurer in January, 1940, to make all further payments under the policy directly to the defendant, and since that time payments have been made to the defendant; that the plaintiff has no interest therein, and that same belonged to the defendant.

There was a direct conflict in the testimony of the appellant, Rutland, and Alfred Leymer, the secretary-treasurer and manager of appellee corporation, as to the alleged contract which was the basis of this lawsuit. The appellant testified that when he accepted the position as assistant manager in 1928, Leymer agreed to carry a $10,000 life insurance policy on him, with a $100 per month total disability provision, and that appellant would be paid said disability benefits in the event of his total disability; that he accepted said position under this agreement; that he resigned in January, 1930, and went to New Orleans, and returned in about two weeks; that Leymer then told him if he would resume his employment, the total disability benefits under the terms of said policy would be paid to him if he became totally disabled, as long as he was disabled; that he accepted said offer, relying on Leymer's statement, and resumed his work for appellee and continued to work until he was totally disabled in June, 1938; that he was paid said disability payments until January, 1940, when appellee had them stopped.

Alfred Leymer testified that there was no agreement with appellant about paying him the disability payments in the event he was disabled, either when appellant was made assistant manager in 1928, or when he returned from New Orleans in 1930 and resumed his former position; that there never was any agreement that appellant would receive the insurance disability payments; that after appellant was disabled and the insurance company began making these payments, the appellee voluntarily and because they wanted to help appellant, paid and caused to be paid to the appellant these monthly disability payments for a period of 18 months; that appellee will collect $10,000 upon the death of appellant.

The appellant and Leymer were the only witnesses who testified about the alleged contract. There were other witnesses and facts and circumstances in evidence. Thus it is seen that there was a direct conflict in the evidence of appellant and Mr. Leymer as to the existence of the alleged oral agreement upon which this litigation is predicated. The one said there was such an oral agree-

ment; the other said there was not. This was the issue to be determined.

The appellant filed a motion for a new trial, assigning as errors the court's action in giving instructions Nos. 2, 3, and 4 requested by appellee over the appellant's general objections to instructions Nos. 2 and 3, and over his general and specific objections to instruction No. 4. In a supplemental motion for new trial the appellant assigned, as an additional ground therefor, newly discovered evidence. The motion for a new trial was overruled, to which appellant excepted. We do not think the court erred in giving the defendant's requested instructions Nos. 2 and 3, nor in refusing to grant a new trial on the ground of newly discovered evidence, for the reason that it was apparent the appellant had some knowledge of the alleged newly discovered evidence and failed to use due diligence to obtain it.

And finally, the appellant contends that the court erred in giving appellee's requested instruction No. 4. This instruction, and the specific objections thereto, are as follows:

## No. 4

"You are instructed that the mere fact that the defendant paid to the plaintiff an amount equal to the disability benefits that accrued under the policy from June, 1938, to December, 1938, and authorized the insurance company to pay said benefits direct to the plaintiff during the year 1939 is not of itself sufficient to establish that the plaintiff is entitled to said benefits. If you find that the defendant did not expressly agree to pay said benefits to the plaintiff as a part of the consideration for his contract of employment, but find that the defendant permitted the plaintiff to receive said benefits as a gratuity, then you are instructed to return a verdict for the defendant.

"The plaintiff specifically objects to that part of said instruction which reads: 'You are instructed that the mere fact that the defendant paid to the plaintiff an amount equal to the disability benefits that accrued under the policy from June, 1938, to December, 1938, and authorized the insurance company to pay said benefits

direct to the plaintiff during the year 1939 is not of itself sufficient to establish that the plaintiff is entitled to said benefits.' The plaintiff objects specifically to that part of the instruction because it singles out one feature of the evidence in the case and directs the jury that that evidence, or fact, in itself does not conclusively sustain liability on the part of the defendant. To single this testimony out unduly emphasizes the fact that it is not conclusive and amounts to an instruction on the weight of the testimony. The plaintiff asks the court to give an instruction which submits the issue to the jury upon all the facts and circumstances in evidence without singling out any one particular fact or testimony for undue emphasis.''

Appellant vigorously contends that the first part of said instruction was highly prejudicial to appellant in that it singled out the most predominant circumstance which supported the appellant's contention, referred to it as the ''mere fact'' and then said it was not alone sufficient to establish that plaintiff was entitled to the disability benefits. The appellant at the time specifically called to the court's attention the objectionable feature of said instruction through his specific objection thereto, and insisted that it unduly emphasized this strong circumstance, and in singling it out in such a manner, amounted to an instruction on the weight of the testimony. We think that under the facts in this case the giving of said instruction, over the specific objection of the appellant, was prejudicial and constituted reversible error.

The courts generally have held that it is improper for a trial judge to single out any one circumstance and give it undue emphasis. This is for the reason that it is well known that a jury is ordinarily influenced by the opinion expressed by the court. It is to guard against such a tendency and to guarantee an even contest on the facts that appellate courts have condemned this practice. Reversals have not always resulted, because in some instances no prejudice could be shown. Where there is prejudice a reversal is proper. Whether there is prejudice depends upon the particular conditions as reflected by the record under consideration.

We quote from 64 C. J. 575: "It is improper for the court to state that a contraverted fact is or is not established; . . . similarly, charges are improper which minimize or belittle evidence, indicate or destroy probative values of testimony, . . . state that certain evidence does or does not prove a fact or only indirectly bears on the issues, state that certain evidence is of little value, is or is not material, is or is not sufficient, . . . tell how certain evidence should be regarded, or considered or interpreted."

On page 582 of the same authority we find: "The court may instruct that issues may be determined by the facts and circumstances in evidence, and it may name facts or circumstances which the jury may consider, but it must not state what the circumstances indicate or destroy the force of circumstances."

In the case of *Hogue* v. *State*, 93 Ark. 316, 124 S. W. 783, 130 S. W. 167, this court said: "The other objection to the instruction is that it singles out this circumstance and unduly emphasizes it. The practice of framing separate instructions on distinct circumstances, and thus, as it is said, singling them out, is not commendable, and it has been held by this court in several decisions that it is not error to refuse such instructions. *Carpenter* v. *State*, 62 Ark. 286, 36 S. W. 900; *Ince* v. *State*, 77 Ark. 418, 88 S. W. 818. But the giving of such an instruction is not prejudicial error where the court in the whole charge directs the jury to consider all the facts and circumstances proved in the case."

In the instant case the court did not in instruction No. 4 nor at any other time tell the jury that it should consider all the facts and circumstances in evidence in reaching its verdict. See *Holland Banking Co.* v. *Booth*, 121 Ark. 171, 180 S. W. 978.

In the case of *Bennett* v. *Bell*, 176 Ark. 690, 3 S. W. 2d 996, this court said: "The instructions relative to the settlement and release were also erroneous. Number 4 unduly stresses the question, and told the jury they were called upon, first, to determine whether there had been a settlement of the claim for damages, and that they need not consider either the negligence of the defendant

or the extent of the plaintiff's injuries until they had decided the question. . . . For the errors designated the judgment is reversed, and the cause remanded for a new trial.''

In the case of *Grayling Lumber Co.* v. *Hemingway,* 128 Ark. 535, 194 S. W. 508, this court said: ''But while the testimony was sufficient to warrant the court in submitting the issue of waiver on the part of appellant of a breach of contract, if any, on the part of the appellee, the court did not correctly submit that issue in instruction No. 4, *supra.* That instruction was calculated to confuse and mislead the jury. It was perhaps intended to cover the question of waiver, but really did not do so. It only directed attention to the single fact of leaving logs in the woods, and told the jury that if appellee did leave logs in the woods, but afterward hauled and delivered these logs, and that same were scaled, accepted and paid for, that this fact would not constitute a breach of contract on the part of appellee. The testimony disclosed other facts than the matter of leaving logs in the woods which appellant contended constituted a breach by appellee of his contract. . . . The instruction was objectional and prejudicial because it gave undue prominence to one particular fact and assumed as a matter of law that there was no breach of contract under the facts stated when this was an issue to be determined by the jury. *Western Coal & M. Co.* v. *Jones,* 75 Ark. 76, 87 S. W. 440. The instruction invaded the province of the jury. . . . For the error in giving instruction No. 4, the judgment is reversed and the cause remanded for a new trial.''

The Supreme Court of Illinois, in the case of *Minnis* v. *Friend,* 360 Ill. 328, 196 N. E. 191, said: ''Similar language to this was condemned in *West Chicago Street Railroad Co.* v. *Petters,* 196 Ill. 298, 63 N. E. 662, where we held that instructions which select one item of evidence or one fact disclosed and state that a certain conclusion does not follow therefrom as a matter of law are calculated to confuse and mislead a jury. *Drainage Commissioners* v. *Illinois Central Railroad Co.,* 158 Ill. 353, 41 N. E. 1073. If such instructions were to be held

proper, a defendant could select each separate fact constituting the entire chain of evidence by which negligence was proved, and thus instruct the jury, through the court, that each link in the chain did not, standing alone, constitute negligence. While the separate links standing alone as 'mere facts' might not constitute negligence, the whole, taken together, would. Thus the consideration of these separate facts would be taken from the jury and its province would be invaded." See *Drda* v. *Drda*, 298 Ill. 278, 131 N. E. 599.

In the case of *Hanson* v. *Schrick*, 160 Ore. 397, 85 Pac. 2d 355, the court said: "The most serious assignment of error pertains to the following instruction of the court: 'I instruct you that the evidence of the smell of liquor on the breath or of having been drinking intoxicating liquor is not sufficient, standing alone, to prove intoxication or that one is under the influence of intoxicating liquors.' . . . Under such state of the record, it was reversible error for the court thus to invade the province of the jury in determining the effect and value of the evidence as to whether plaintiff was under the influence of intoxicating liquor. It has been repeatedly held by this court that it is error for the trial court to select a single part of the evidence and instruct the jury as to its probative value."

In the case of *Garvey* v. *Chicago Railways Co.*, 339 Ill. 276, 171 N. E. 271, the Illinois Supreme Court reversed the lower court for giving the following instruction: "The court instructs the jury that the defendant, the Yellow Cab Company, had the right to operate the taxicab in question on the north-bound street car track on Halsted street, and the jury are not to infer that the Yellow Cab Company was negligent from the mere fact that the taxicab was in the north-bound track."

The court said:

"It is a settled principle that an instruction should not draw the attention of the jury to particular facts and that it is improper to inject an argument into an instruction. Where an instruction selects one item of evidence, or one fact disclosed by the evidence, and states that a certain conclusion does not follow as a matter of law

from that fact, it is calculated to mislead and confuse the jury. *Drainage Com'rs* v. *Illinois Central Railroad Co.*, 158 Ill. 353, 41 N. E. 1073; *West Chicago Street Railroad Co.* v. *Petters*, 196 Ill. 298, 63 N. E. 662; *Illinois Central Railroad Co.* v. *O'Keefe*, 154 Ill. 508, 39 N. E. 606; *Pienta* v. *Chicago City Railway Co.*, 284 Ill. 246, 120 N. E. 1. The principles thus clearly laid down in these authorities constrain us to say that in the light of the facts of the present record the giving of instruction 35 was reversible error.''

The appellee contends that the statement included in its instruction No. 4 was not reversible error, and cites and chiefly relies upon the case of *Arkadelphia Milling Co.* v. *Campbell*, 141 Ark. 25, 216 S. W. 20, where this court did not reverse the case because of a similar provision in an instruction.

In the Arkadelphia Milling Company case the instruction was as follows: ''You are instructed that if you believe from the evidence that W. L. Campbell was the foreman and agent of A. O. Campbell in the construction of Henderson-Brown College and acting as such agent purchased the necessary material for Henderson-Brown College, this fact alone is not sufficient evidence that he had any authority to enter into a contract binding A. O. Campbell, to build a warehouse for the plaintiff as payment for any material purchased.''

However, the facts in the Arkadelphia Milling Company case are clearly distinguishable from the facts in the instant case. In that case the Arkadelphia Milling Company sued A. O. Campbell upon a contract which was executed between it and W. L. Campbell, claiming that W. L. Campbell was the agent of A. O. Campbell. There was no evidence whatsoever that A. O. Campbell authorized W. L. Campbell to enter into the contract. In this case they attempted to fix liability on A. O. Campbell by reason of the fact and on the theory that W. L. Campbell had been acting as agent for him in another matter. No one testified that there was any contract or agreement between A. O. Campbell, the defendant, and the plaintiff, Arkadelphia Milling Company. Hence the court no doubt thought it was proper to incor-

porate in the instruction the fact that W. L. Campbell was foreman and agent of A. O. Campbell in the construction of Henderson-Brown College and acting as such agent purchased the necessary material for Henderson-Brown College, was not alone sufficient evidence that he had any authority to enter into a contract binding A. O. Campbell to build a warehouse for the plaintiff. Doubtless this instruction was given because there was absolutely no evidence of direct authorization from A. O. Campbell to W. L. Campbell to enter into this contract with the Arkadelphia Milling Company, and the fact that W. L. Campbell had been the agent of A. O. Campbell in another matter, was a circumstance which needed explanation.

On the other hand, in the instant case, the appellant testified positively and unequivocally that he did have a contract with the appellee which entitled him to the disability benefits. No contention was made by the appellant in the instant case that the fact that the appellee paid and caused to be paid to the appellant the disability benefits for a period of 18 months, standing alone, was sufficient to establish liability. However, the appellant contended that the fact that such payments were made was a strong circumstance in corroboration of his direct testimony. The fact that disability benefits had been paid to appellant was only a circumstance, but the appellant contends that it was a strong circumstance to show that the appellant and the appellee did have such a contract.

If the payment of benefits for 18 months had been the only fact in evidence, then it would have been proper for the court to say as a matter of law that no contract had been proved. Since there was direct testimony as to the existence of a contract, and as there were other facts and circumstances, the court should not have singled out this one circumstance.

Having reached the conclusion that the giving of instruction No. 4 at the request of appellee under the facts and circumstances in this case, and over the specific objection and exception of the appellant was preju-

dicial error, the judgment is accordingly reversed, and the cause remanded for a new trial.

GRIFFIN SMITH, C. J., MEHAFFY and McHANEY, JJ., dissent.