BOCKMAN *v.* BUTLER, ADMINISTRATRIX.

5-496                                                           271 S. W. 2d 918

Opinion delivered October 25, 1954.

*John C. Sheffield* and *Cracraft & Cracraft,* for appellant.

*A. M. Coates,* for appellee.

WARD, J.    This is an appeal from a jury verdict awarding damages against Dr. James Bockman for failing "to exercise a high degree of care and skill or the care and skill of an average practitioner in his vicinity in the examination, observation, and treatment" of Aubrey Donald, age 9, and Willie Donald, age 8, who received head injuries by falling or jumping from an automobile.

A reversal is sought on the grounds of no substantial evidence and erroneous instructions.

*Facts and circumstances.*    There is not, with one or two exceptions, much conflict in the testimony.    On the

morning of June 13, 1953, at about 9 or 10 o'clock, Aubrey and Willie Donald received head injuries by either falling or jumping from an automobile in which they were riding. It was immediately observed that both were bleeding about the head and ears. The boys' grandmother and aunt were with them, and they drove the boys forthwith to the office of Dr. H. B. Oldham at West Helena, who, without making a full examination, directed that the children be taken immediately to the Helena Hospital for X-ray examination, stating that he would follow soon thereafter. Those attending the children, acting apparently on the advice of Dr. Oldham, were on the way to the hospital when they passed the clinic of appellant, Dr. James Bockman, when, at the suggestion of the children's aunt, they took the children to Dr. Bockman for an examination. Although Dr. Bockman had several patients waiting in his office at the time, he gave immediate attention to the two boys, and he and his assistant washed the blood and dirt from their heads and bandaged them. He thereupon made an examination by means of a fluoroscope. After the examination Dr. Bockman, according to statements made by his assistant and several of the patients who were waiting in his office, advised that the children be taken to a hospital. On the contrary, witnesses for appellees testified that Dr. Bockman did not advise taking the children to a hospital but that he said the children were not seriously injured. The grandmother and aunt testified that Dr. Bockman told them he did not think the boys were badly hurt, that he gave them some sedative tablets, and that he asked to have the boys brought to his office the next day, charging a fee of $10.00 for services.

At any rate Willie was taken to his home at Oneida and Aubrey was taken to the home of a relative in West Helena. Witnesses do not agree as to the exact hour of the day that the children were taken to Dr. Oldham or to Dr. Bockman but it was somewhere near 11 o'clock when Aubrey arrived at the home of the relative in West Helena, where it was soon discovered that he was very ill and was put to bed. Somewhere around 2:30 p. m.

on the same day Aubrey was also taken home to Oneida and within an hour or two, when he appeared to be growing worse, he was taken to the office of Dr. Dan Miller at Helena. At Dr. Miller's suggestion Aubrey was taken to the Helena Hospital where he arrived around 5:30 p. m. Upon arrival at the Helena Hospital, in the absence of Dr. Oldham who had expected to see the children there earlier, Dr. McCarty saw Aubrey and administered a sedative. It is not shown that anything else was done until Dr. Oldham arrived later, when he immediately contacted Dr. Schultz, a brain surgeon in Memphis, and arranged for both children to be sent to him for examination and treatment. When the children arrived in Memphis it was somewhere around 10:00 p. m. [of the same day] and it was found that Aubrey had died en route. Willie was kept in the hospital for 4 or 5 days under observation and was discharged. Aubrey was never X-rayed, but the X-ray of Willie's skull showed that Willie had suffered a linear fracture of the skull.

In view of our disposition of this case, later announced, it would serve no useful purpose to detail the testimony relating to negligence on the part of appellant or whether it was the cause of Aubrey's death and the pain suffered by him and Willie. Suffice to say here that there was substantial evidence to show negligence and also to show its causal effect resulting in the death of Aubrey and the suffering of both boys. We do note, however, that the evidence relating to causal effect was, necessarily, not positive but in the nature of medical opinions, and that no apparent attempt was made to distinguish between pain which the boys did actually suffer and the pain they would have suffered anyway if Dr. Bockman had acted with due care.

After considering the testimony and the Court's instructions, the jury returned a verdict in favor of the administrator of Aubrey's estate in the amount of $1,-500.00 for pain and suffering, $2,000.00 for mental anguish to next of kin, and $500.00 for medical and funeral expenses, and in favor of Willie in the sum of $1,000.00 for pain and suffering.

For a reversal appellant assigns numerous errors among which are that there was no substantial evidence to submit the question of liability to the jury and that several of the instructions given by the court were prejudicial. We find it unnecessary to discuss all of these assignments for the reason that, after careful consideration, we are of the opinion that the court erred in giving plaintiff's Instruction No. 4. We set out below said Instruction No. 4 just as it was given by the court but, for the sake of ready reference we have added the number "3" to the last paragraph.

"You are instructed that in order for the plaintiffs to recover in this cause against the defendant the burden is upon them to prove:

1. That the defendant, Dr. James Bockman, was negligent in the diagnosis, treatment and giving of instructions to Aubrey Donald and Willie Donald or their attendant, and;

2. That such negligence was the proximate cause of the unnecessary and prolonged suffering, if any, of Willie Donald and the unnecessary and prolonged suffering, if any, of Aubrey Donald and the death of Aubrey Donald.

3. However, the law does not demand that the plaintiffs establish with certainty the proximate cause of the injuries complained of. If a preponderance of the proof convinces you that a certain factor probably bore to injury and relationship of cause, the law is satisfied and denominates it the proximate cause. Certainty is not required, probability will suffice."

To the above instruction counsel for appellant promptly objected both generally and specifically, calling attention to the wording of paragraph (3).

It is our best judgment that the above instruction was prejudicial to the right of appellant. It appears that this instruction was taken from the case of *Lippold* v. *Kidd*, 126 Or. 160, 269 Pac. 210, 59 A. L. R. 875, but it also appears that the second sentence in paragraph (3)

is not an exact copy of the statement in that case. There, the Court's statement was:

"If the proof shows that a certain factor probably bore to injury the relationship of cause, the law is satisfied, and denominates it the proximate cause."

By reference to paragraph (3) of Instruction No. 4, it is obvious that the second sentence does not convey the same thought as that expressed in quotations above, and it is hard to see how it conveys any intelligent meaning. That being true we cannot feel sure that the jury was not confused or even misled, but this is not a major factor influencing our final determination.

The fatal vice, in Instruction No. 4, as we see it, is the last sentence in the third paragraph, which reads: "Certainty is not required, probability will suffice." Again it appears that this last sentence was also taken from the opinion in the above cited case but it was inserted in Instruction No. 4 out of the context used in the *Lippold* case. In the cited case, the facts and the testimony being somewhat similar to the case under discussion, the court in its discussion of the case made the statement first mentioned, and then, several paragraphs later when the court was concluding its opinion, it said:

"We have no desire whatever to construct a snug harbor constituting a haven of refuge for the medical practitioner who negligently discharges his duty which he owes to his patient; but we believe that in those instances in which a plaintiff should recover he ought to have no serious difficulty in supplying the necessary proof of proximate cause, as we have said before, *certainty is not required; probability will suffice.*"

It is clear to us that the court in using the italicized words above was not attempting to give a rule by which the evidence should be weighed but was merely referring back to its first pronouncement. Moreover, the Court's language in the *Lippold* case was not approved as an instruction for the guidance of a jury, nor was it a direct attempt to define *proximate cause.*

A diligent search of the authorities in this and other jurisdictions has failed to reveal any approved instruction on *proximate cause* containing the phrase "Certainty is not required, probability will suffice." On the other hand this court has so consistently defined *proximate cause* that the language has become reasonably fixed and uniform. For this reason we deem it unwise to change or modify our approved definition by including therein language of such doubtful meaning, especially on such doubtful authority as the *Lippold* decision.

In *Arkansas Valley Trust Company* v. *McIlroy*, 97 Ark. 160, 133 S. W. 816, 31 L. R. A., N. S. 1020, the following definition was approved:

" 'In determining whether an act of a defendant is the proximate cause of an injury the rule is that the injury must be the natural and probable consequence of the act—such a consequence, under the surrounding circumstances of the case, as might and ought to have been foreseen by the defendant as likely to flow from his act.' "

Practically the same definition appears in numerous other cases, such as: *Wisconsin & Arkansas Lumber Company* v. *Scott*, 153 Ark. 65, 239 S. W. 391, and *Meeks* v. *Graysonia, Nashville & Ashdown Railroad Company*, 168 Ark. 966, 272 S. W. 360.

We recognize that an endless argument could ensue over the exact meaning of "probability," but that fact alone dictates caution in its use, particularly in a short, unexplained sentence when intended as a guide for juries. No judicial interpretation of the word thus used has been called to our attention, nor has our own investigation revealed any. The nearest approach is found in *Industrial Commission* v. *Jasionowski*, 24 Ohio App. 66, 156 N. E. 616. There the trial court had given an instruction in which appeared the phrase ". . . your basis of calculation or speculation upon the probabilities must arise upon the testimony . . ." In disapproving the instruction the court said:

"This language could not fail to be confusing and misleading to the jury, and was erroneous. It is not for

the jury to speculate upon probabilities, nor even to determine the same upon the testimony, but to determine the case upon the weight of the evidence under the instructions of the court as to the law.''

In view of the possibility of another trial in these cases, we deem it advisable to express our view that Instruction No. 5, requested by appellees and given by the court, is not proper. Not only does it call attention to one isolated phase of the testimony, but there is also a paucity of testimony to show an X-ray was available to appellant. The court, in the case of *Rutland* v. *P. H. Ruebel & Co.,* 202 Ark. 987, 154 S. W. 2d 578, discussed at length the inadvisability of singling out certain testimony in an instruction. The court, at page 993 Arkansas Reports, said:

''The courts generally have held that it is improper for a trial judge to single out any one circumstance and give it undue emphasis. This is for the reason that it is well known that a jury is ordinarily influenced by the opinion expressed by the court. It is to guard against such a tendency and to guarantee an even contest on the facts that appellate courts have condemned this practice. Reversals have not always resulted, because in some instances no prejudice could be shown. Where there is prejudice a reversal is proper. Whether there is prejudice depends upon the particular conditions as reflected by the record under consideration.''

The two captioned cases were consolidated for trial and on appeal, and this opinion likewise applies to both, and the judgments in both cases are reversed and remanded for further proceedings not inconsistent with this opinion.