BOCKMAN *v.* BUTLER, ADMINISTRATRIX.

5-899                                    288 S. W. 2d 597

Opinion delivered April 2, 1956.

*John C. Sheffield* and *Cracraft & Cracraft*, for appellant.

*A. M. Coates*, for appellee.

ED. F. McFADDIN, Associate Justice.   This appeal is by Dr. James Bockman from judgments against him for malpractice in the diagnosis and treatment of two little boys, each suffering from a skull fracture.   The

complaints alleged, the evidence showed, and the Jury found, that, as a result of such malpractice: one little boy died, the other experienced considerable pain, and the grandparents incurred expense and suffered mental anguish. This is the second appearance of this case. In *Bockman* v. *Butler,* 224 Ark. 125, 271 S. W. 2d 918, the facts are given in detail, and need not be here repeated. We remanded the cases because of errors in instructions; and on retrial there were verdicts against Dr. Bockman as discussed in Points II and III, *infra.* On this appeal, Dr. Bockman presents the three points now to be discussed.

I.   Appellant says: *"In an action for malpractice, the accused doctor has a right to have his standard of care and treatment measured and tested by the rules and principles of the particular school of medicine to which he belongs and not by those of some other school."*

In the course of the trial, seven physicians testified that Dr. Bockman's diagnosis and treatment of the little boys amounted to malpractice. Six of these were practicing physicians in Phillips County, and the seventh was the neurosurgeon of Memphis who performed the operation on Willie Donald. On cross-examination of each of these doctors, it was developed that they were of the Allopathic school of medicine, and it seemed to be generally conceded, without direct question and answer to that effect, that Dr. Bockman was of the Eclectic school of medicine. Because of the fact that all of the testifying doctors were of the Allopathic school, and that Dr. Bockman was of the Eclectic school, the appellant, after having developed this distinction on cross-examination, moved to strike from the record all of the testimony of the seven doctors as incompetent, and also moved for a directed verdict because there was no testimony by any doctor of the Eclectic school. Also on the same point Dr. Bockman complains of the giving and refusing of certain instructions.

One of the leading cases on this point is that of *Swanson* v. *Hood,* 99 Wash. 506, 170 Pac. 135, in which the Supreme Court of Washington stated:

"Appellant takes the broad position that a physician of one school is not competent to testify in a suit for malpractice or negligence of a physician of another school. Several decisions are cited which it is claimed support this view, but, as we read them, they hardly go that far. The rule is not that a physician of another school is not competent to testify, but that a defendant's treatment is to be tested by the general doctrine of his own school, which is a very different thing; in other words, the standard of exclusion of evidence is not the school of the witness, but the premises of his testimony. If the premises from which he testifies, that is to say, the criterions by which he measures defendant's treatment, are those of defendant's own school, the witness is not disqualified merely because he himself belongs to another school. *Bowman* v. *Woods,* 1 G. Green (Iowa) 441; *Force* v. *Gregory,* 63 Conn. 167, 27 Atl. 1116, 22 L. R. A. 343, 38 Am. St. Rep. 371; *Martin* v. *Courtney,* 75 Minn. 255, 77 N. W. 813; *Patten* v. *Wiggin,* 51 Me. 594, 81 Am. Dec. 593; *Grainger* v. *Still,* 187 Mo. 197, 85 S. W. 1114, 70 L. R. A. 49."

Our own case of *Dorr, Gray & Johnston* v. *Headstream,* 173 Ark. 1104, 295 S. W. 16, while dissimilar in facts from the case here, nevertheless points to the logic of the quoted language, because, in our case, doctors who did not devote their entire time to the practice of X-ray were nevertheless permitted to testify as to what would be negligence in X-ray matters. There is an annotation in 78 A. L. R. 697 entitled: "Competency of physician or surgeon of school of practice other than that to which the defendant belongs to testify in malpractice case"; and many cases are there cited in accord with the language quoted from the Washington case of *Swanson* v. *Hood* (*supra*).

In the case at bar, Dr. Bockman did not testify, and no doctor of the Eclectic school of medicine testified; and Dr. Bockman did not claim, nor offer to prove,

that the teachings and methods of practice of the Eclectic school of medicine were at variance from those of the Allopathic school in injuries like those here. On the other hand, several of the seven doctors testified that they had never heard of any school of medicine diagnosing and treating skull fractures like Dr. Bockman did in this case. Dr. Schultz, the neurosurgeon, testified:

"Q. You have detailed the accepted method of head injuries of the kind we have here. Do you know of any other method that is known to medical science in the treatment of such head injuries?

A. I assume you mean the treatment as of today's modern medical science?

Q. Yes.

A. No, I don't . . ."

Dr. McCarty, of Phillips County, testified:

"Q. You have testified what the general practice of the doctors in good standing in this vicinity is?

A. Yes, sir.

Q. Do you know of any other method known to medical science for treating injuries of this type?

A. No, sir . . ."

Dr. Bell, of Phillips County, after describing a method of diagnosis and treatment entirely at variance with that used by Dr. Bockman, testified:

"Q. Is there any other method known to medical science of treating head injuries of the type I have mentioned?

A. Not to my knowledge . . ."

So we conclude that, under the testimony of Doctors Schultz, McCarty and Bell, there was sufficient evidence to take to the Jury the question of the malpractice of Dr. Bockman; and, therefore, appellant's first contention is without merit under the facts as shown by the record in this case.

II.   The appellant says: *"The verdicts of the jury were excessive and not supported by the evidence."*

It will be remembered that the little boys had already received the skull fractures before they were taken to Dr. Bockman and, of course, the rule is well settled that in such a situation the physician found guilty of malpractice is not chargeable for pain, suffering or anguish that arose because of the original ailment, but is chargeable only for the pain, suffering, anguish and expenses that naturally follow from the malpractice.   (See 41 Am. Jur. 247 and cases cited in footnotes 12 and 13 thereof.)   Because of this rule, appellant argues that the verdicts are excessive.

The verdict for Willie Donald was $250.00 for pain and suffering resulting from the malpractice; and a reading of the record in this case establishes that such amount is not excessive.   But for Dr. Bockman's malpractice, the little boy would have been promptly taken to the hospital in Helena and correctly treated.   Because of Dr. Bockman's malpractice, the little boy suffered much more and had a long hard recovery.   There was a verdict for Everlina Butler for $250.00.   It was shown that she was the grandmother of Willie Donald and stood in *loco parentis* to him, and that because of Dr. Bockman's malpractice she was obliged to take the child to Memphis and expend considerable time and money in his recovery, all of which could have been materially reduced except for the malpractice of Dr. Bockman.   So the verdict to her was not excessive.

Likewise, in the Aubrey Donald case, there is nothing excessive in the verdict of $500.00 to Lee Butler and Everlina Butler, grandparents of Aubrey Donald, for the medical and funeral expenses that they incurred. From the evidence the Jury could have found that this little boy would not have died except for Dr. Bockman's malpractice; and we cannot say that the $500.00 is excessive for the funeral expenses and other expenses in connection with the death of this little boy.   That leaves only the question of $2,000.00 for mental anguish, which is to be discussed in the next topic.

III. The appellant says: *"The jury verdict in favor of the next of kin of Aubrey Donald for mental anguish was not supported by any evidence of such mental anguish."*

The Jury verdict was for $2,000.00 for the use and benefit of the next of kin for mental anguish for the death of Aubrey Donald; and the evidence conclusively established that Lee Butler and Everlina Butler, the grandparents of Aubrey Donald, stood in *loco parentis* to him. Prior to Act 115 of 1949, in a case like this one, damages were not recoverable for mental anguish sustained because of the death of a loved one.[1] Our present statute allowing recovery for mental anguish may be found in § 27-904 in the Cumulative Pocket Supplement of Ark. Stats., and a comparison of the previous law with the 1949 Act shows that in giving the items of damage there can now be compensation to the next of kin for "mental anguish"; and then there is added this clause at the end of the previous law:

"However, when mental anguish is claimed as a measure of damages under this statute, such mental anguish will be applicable only to the wife, **parent, child,** brother, sister or persons standing in *loco parentis* to the deceased at the time of the injury which caused the death of the deceased."

That Everlina Butler and Lee Butler sustained mental anguish in the loss of the little grandchild they had raised, is clearly reflected from the evidence. The appellant claims that Everlina Butler and Lee Butler as grandparents were not the "next of kin" of the little boy, and that there is no evidence that the "next of kin" — if same be other than Everlina Butler and Lee Butler—ever sustained any mental anguish. There is nothing in the record to show that there were any next of kin except the grandparents, Lee Butler and Everlina

---

[1] In 3 Ark. Law Review at page 373 there is a very good statement of the holdings prior to the Act 115 of 1949 and the effect of that Act in allowing recovery for mental anguish.

Butler, and Willie Donald, the little brother.[2]  There is no evidence in this record that the parents of Aubrey Donald are living.  Certainly Everlina Butler and Lee Butler stood in *loco parentis* to the deceased at the time of the injury; and our Statute says that when mental anguish is claimed as damages, then it must have been suffered by certain persons, some of whom are those who stood in *loco parentis*.  Everlina Butler was the Administratrix; she brought this action; she testified that she and Lee Butler stood in the relation of parents to the little boy.

Finding no error, the judgment is affirmed.

---

[2] Everlina Butler testified:  "Q. Is Lee Butler your husband?  A. Yes, sir.  Q. What kin was Aubrey Donald and Willie Donald to you?  A. Grandsons.  Q. How long had they lived with you and your husband?  A. All their life.  Q. All their life they had lived in your home?  A. Yes, sir.  Q. You and your husband stood in the relationship of parents to them?  A. Yes, sir."

Lee Butler testified:  "Q. You are the husband of Everlina Butler?  A. Yes, sir.  Q. And the grandfather of these two children?  A. Yes, sir.  Q. Everlina testified that you have raised the two children from birth?  A. Yes, sir."