## THE STATE VS. FAIRCHILD.

'The legislature can pass any law, not prohibited by the legitimate operation of any of the limitations imposed upon it by the powers delegated to the federal government, or by the restrictions in the constitution.

'The act, approved the 15th January, 1855, establishing a separate Chancery Court for the county of Pulaski, declared to be constitutional.

A writ of *quo warrante* was issued, upon the motion of the Attorney General, against the defendant, to show by what authority he exercises the office of chancellor, and assumes to exercise a separate chancery jurisdiction, aside and apart from the Circuit Court, in and for the County of Pulaski. The defendant filed his response, setting out the act of the General Assembly, establishing a Chancery Court of said county, his nomination to and confirmation, by the Senate, as chancellor of such court, and his commission and oath of office. The State demurred to the response, and the defendant joined in the demurrer.

Mr. S. W. WILLIAMS, Attorney General, for the State.

Mr. HEMPSTEAD and Mr. WATKINS, contra.

Mr. Justice SCOTT delivered the opinion of the Court.

The issue upon the demurrer to the response of chancellor Fairchild, presents the question whether or not the act of the Legislature, approved the 15th of January, 1855, in its provision for establishing a separate court of chancery, at the seat of government, and for the appointment of a chancellor to preside therein,

is constitutional. No other question has been discussed, or seems to be involved, and to the solution of this, as best we may, we shall at once proceed.

No one, it is presumed, will doubt but that this, like those of all the sister States, is a government of delegated and limited powers. Some of these limitations pervade the entire government throughout each of its departments in detail; while others restrict only a particular department, or one or more of its details only. They result, for the most part, from the powers delegated by the people of this State to the Federal Government. From our bill of rights, and from provisions of other portions of our written constitution, with these limitations upon its authority, the Legislature is the great residuum of the sovereign powers entrusted to the Government; and, consequently, can pass any law not prohibited by the legitimate operation of any of these limitations. If all the provisions of the constitution relating to chancery and corporation courts were expunged from that instru_ment, and the remainder retained, there would unquestionably be strong ground upon which to maintain a negation of any power in the Legislature to establish any court of either class; because, in that case, the entire judicial power would seem to have been permanently vested in courts that had been, in express terms, created by the constitution; in which also corresponding provisions for the appointment of all the appropriate officers had been made. But when, on the contrary, there is, in connexion with those, the express provision that "The General Assembly may also vest such jurisdiction as may be deemed necessary in corporation courts, and when they may deem it expedient, may establish courts of chancery;" (*Art. VI*, *sec.* 1,) and that, "Until the General Assembly shall deem it expedient to establish courts of chancery, the Circuit Court shall have jurisdiction in matters of equity, subject to appeal to the Supreme Court in such manner as may be prescribed by law," (*sec.* 6) there would seem to be no ground at all upon which to doubt the power of the Legislature in question, to be exerted whenever they may deem it

expedient.    For these provisions express, in very distinct terms,. the affirmative of the proposition.

It will doubtless be conceded that no limitation to the power thus affirmed can be found to have resulted from any delegation of powers to the Federal Government from the people of this State, that would not equally apply to every action of our people in convention, in reference to the establishment of a State government.    And a like concession will be made as to any that could result from any of the primeval objects of human government, which were too palpable and self-evident even to have a place in a bill of rights, and are therefore supposed and taken for granted in every move for the establishment of a government by a free people.    Hence the only limits to the power in question, in the aspect in which it is presented to us, is to be found in our bill of rights and other provisions of the constitution.    And as to the bill of rights, it may be safely affirmed, that the extent of limitations is not beyond the measure that was practically illustrated by the convention, in the creation of the courts that were ordained by that body, and cannot be so great, in one respect at least, because the right of trial by jury has never been construed under like circumstances, to have any reference to proceedings, in chancery.

Further limitations, then, upon this affirmed power, if any exist, are to be sought only in other provisions of our constitution, either in themselves or in their legitimate results.    Of the former, none have been suggested or are known to us.    Of the latter, all that have been urged, are referable to a single head, to wit: inequality of benefits, and inequality of burthens.    It being insisted that equality of benefits and of burthens, as a pervading element, is diffused to every fibre of our government: and doubtless this is true as to its aims and objects; but these are human, and are sought to be effected by human means.    And if completeness is to be the measure of this inequality, and the fruits of human government the proof, such aims are utopian, but still worthy of the best efforts of the enlightened patriotism of the

age, that approximation may still progress. So, if approxima-
tion to this designed equality of benefit and burthen, is to be the
test, unless some measure for it be fixed by the constitution, in
some tangible landmarks, that will perform the double office of
a standard for its ascertainment, and a limitation upon the legis-
lative power on the subject, there can be no test by which to
determine the constitutionality of legislation involving any ques-
tion of equality or inequality of benefit and burthen.

It has been urged that such a tangible landmark can be found in
the political truth, that must have been in the view of the con-
vention, that justice can be best administered in a system em-
bracing numerous courts, so arranged that every citizen should
have convenient access to justice, and that the system of com-
mon law courts illustrating this truth as conceived by the con-
vention, so far as practicable, or at least so far as indicated by the
temporary investment of the chancery powers by that body,
should be regarded as this tangible landmark to perform this
double office. Whether this be so or not, it is not necessary for
us to determine, because the facts of this case present no depar-
ture from that standard, since the act in question in no way dis-
turbs the investment of the chancery power as temporarily made
by the convention, except only as to the single county of Pu-
laski; and, as to this county, the main effect of the enactment is
but to divest one functionary of chancery powers, and to invest
another with the same. Nor can the objection, made to the mode
of appointment of the latter functionary be sustained, since it is
in express terms provided in the constitution, that "The appoint-
ment of all officers, not otherwise directed by this constitution
shall be made in such manner as may be prescribed by law."
Art 4, sec. 28. Nor the objectoin upon the ground of inequality
of benefits and of burthens, urged against the salary provided
for him out of the State Treasury; since there is no express inhi-
bition upon the legislative power as to this, and if the provision,
as to the salary of other judicial officers, is to be the test, there is
still no inhibition; because, under these provisions, no one could

doubt but that it would be entirely within the powers of the Legislature to fix unequal salaries for judicial officers of the same class, and upon the principle that this objection is urged, ought to do so, when unequal labors are required. And in one respect at least, relative inequality of labor is imposed upon the Circuit Court for Pulaski county, so long as the seat of government remains here, since by law all suits against the State must be brought in that court. And there can be no substantial difference between paying a salary to *one* functionary who should perform all the labors, and to *two*, who might be required to divide them. Nor does there seem to us anything in the objection that the failure of the Legislature to divest the Circuit Courts of other, or of all the other counties, of chancery jurisdiction, at the same time that they divested that for the county of Pulaski, in the manner provided in the act in question, in any way involved their power in the premises. Because there is no express provision of the constitution to this effect, and legitimate inferences from such provisions as seem to touch the point at all, would be rather in favor of the action of the Legislature than against it, since it is to be strongly inferred from the temporary investment of chancery powers in the Circuit Courts, that in the judgment of the convention, the people of the State were not then in a condition to require separate chancery courts, and that these wants were afterwards to arise. And it could scarcely be expected otherwise, than that in the progress of development these wants would sooner be manifested in some particular quarters of the State, than in all portions at once. Hence, as to corporation and chancery courts, a large discretion seems to have been wisely entrusted to the Legislature, subject to the political responsibility of its members to the people; of which the judiciary can take no cognizance without passing the line, which, in our form of government, circumscribes this department.

It but remains to announce that we entertain no doubt of the constitutionality of the act of the Legislature in question, so far as this case involves it, and therefore that the demurrer must be overruled, and judgment entered accordingly.