PEUGH *v.* OLIGER, ADMX.

5-2243 & 5-2244                                    345 S. W. 2d 610

Opinion delivered March 20, 1961.

[Rehearing denied May 15, 1961.]

*J. M. Smallwood,* for appellant.

*Gordon & Gordon* and *Charles L. Farish,* for appellant.

ED. F. McFADDIN, Associate Justice. This appeal necessitates a study of Act 255 of 1957, insofar as concerns mental anguish.[1] Mr. and Mrs. Eugene H. Eubanks and Mr. and Mrs. Albert Henley were all killed in an automobile collision that occurred between the Eubanks car and a truck belonging to McClure Gin Company. Separate actions were instituted against the McClure Gin Company and its driver, James T. Peugh. In one case the plaintiff was Gene Frances Oliger, as Administratrix of the Estates of Mr. and Mrs. Eubanks; and in the other case the plaintiff was Luther Drake, as Administrator of the Estates of Mr. and Mrs. Henley. Each action sought recovery of both

---

[1] The Act 255 of 1957 may be found in § 27-906 *et seq.* in the Cumulative Pocket Supplement to Arkansas Statutes. The Act has other provisions aside from the mental anguish matters herein discussed.

compensatory and punitive damages for the estate of each deceased, and also sought damages for mental anguish suffered by the relatives of each of the four deceased persons. The damages for mental anguish were sought under the provisions of Act 255 of 1957. The actions were consolidated for trial and resulted in verdicts and judgments for the estates of the deceased parties covering medical and funeral expenses, property damages, and conscious pain and suffering, which judgments have been paid, and are not here involved. Verdicts and judgments were also rendered for the use and benefit of certain relatives of each of the deceased persons for the mental anguish suffered by such relatives. The jury apportioned the negligence of the drivers of the vehicles under the Contributory Negligence Statute (§ 27-1730.2, Ark. Stats.), as follows: James T. Peugh, 55%; and Mr. Eubanks, 45%. Judgments for mental anguish, which are the subject of this appeal, were rendered in accordance with verdicts of the jury, as follows:

For the death of Eugene H. Eubanks (aged 76 years) the jury awarded Gene Frances Oliger,[2] an only child, $12,500.00; and Mrs. Luther (Lela) Drake, a sister.[3] $3,000.

For the death of Mrs. Blanch Eubanks (aged 65 years) the jury awarded Mrs. Gene Frances Oliger, an only child, $12,500.00; Mrs. Fannie Oliphant, mother, $2,500.00; Mrs. Ione Brewer, a sister, $2,500.00; and Vernon Tolbert, a brother, $2,500.00.

For the death of Albert Henley (aged 81 years) the jury awarded his five children by a former marriage:

---

[2] Judgment was rendered by the Court on this verdict in the sum of $6,875.00, the recovery being diminished in proportion to the contributory negligence of deceased as determined by the jury (§ 27-1730.2, Ark. Stats.).

[3] Judgment was rendered by the Court for the use and benefit of Mrs. Luther (Lela) Drake in the sum of $1,650.00, in accordance with the verdict of the jury as to the apportioned negligence. In other words, the jury allowed a total of $57,500.00 for the mental anguish of the relatives, which amount was reduced in the Court's judgment to $50,-525.00 by reason of the contributory negligence of Eugene H. Eubanks, his relatives receiving judgment for 55% of the jury's verdict.

Homer Henley, Willett Henley, Hugh Henley, Irene Abbott, and Albert Henley, $2,000.00 each.

For the death of Mrs. Henley (aged 81 years) the jury awarded Mrs. Leta Ring, a niece, who stood in the position of a foster daughter, $10,000.00; and Mrs. Luther (Lela) Drake, a sister, $2,000.00.

From these judgments totalling $50,525.00 for mental anguish, W. H. McClure Gin Company, Inc. and James T. Peugh prosecute this appeal and urge, *inter alia,* the points hereinafter mentioned.

I. *The Constitutionality Of Act 255 Of 1957 Insofar As Concerns The "Mental Anguish" Provision.* The said Act—insofar as is here germane—provides:

"The jury, or the Court in cases tried without a jury, may fix such damages as well be fair and just compensation for the pecuniary injuries . . . and/or mental anguish resulting from such death, *to the surviving spouse and next of kin of such deceased person.*[4] However, when mental anguish is claimed as a measure of damages under this statute, such mental anguish will be applicable only to the surviving spose, children, father and mother, brother, sister or persons standing in *loco parentis* to the deceased and persons to whom the deceased stood in *loco parentis,* at the time of the injury which caused the death of the deceased."

In claiming that the said mental anguish provision is unconstitutional, the appellants quote extensively from *St. L. I. M. & S. Ry. Co.* v. *Taylor,* 84 Ark. 42, 104 S. W. 551, 13 L.R.A., N. S. 159, wherein this Court said, *inter alia:* "The reason that mental suffering, unaccompanied by physical injury, is not considered as an element of recoverable damages is that it is deemed to be too remote, uncertain, and difficult of ascertainment. . . ." Appellants also point out that Article II, § 13, of the Constitution of Arkansas provides: "Every person is entitled to a *certain*[5]

[4] Emphasis supplied here as pertinent to discussion under Point IV *infra.*
[5] Emphasis supplied.

remedy in the laws for all injuries or wrongs he may receive in her person, property or character; . . ." From the quoted provisions of the case and the Constitution, appellants say that, since the Court held that mental suffering was "uncertain," and since the Constitution guarantees "a certain remedy," it would necessarily follow that a recovery for mental anguish would violate the quoted section of the Constitution since mental suffering is "uncertain."

We do not agree with the appellants in their arguments on this point. Article II, § 13 of the Constitution is a part of the Bill of Rights, and is a guarantee of rights, and not a *restriction*[6] on the power of the Legislature to enact remedial laws. Article V of the Constitution relates to the Legislative Department; and we find nothing in that Article which would prohibit the Legislature from passing the act herein questioned. The extent of the Legislature's authority was determined in some of our very earliest decisions wherein we held that the Legislature may pass any law not prohibited by the State or Federal Constitutions. See *State* v. *Ashley,* 1 Ark. 513; *State* v. *Fairchild,* 15 Ark. 619; *Henry* v. *State,* 26 Ark. 523; *Straub & Lohman* v. *Gordon,* 27 Ark. 625; *Dabbs* v. *State,* 39 Ark. 353, 43 Am. Rep. 275. This rule has been consistently adhered to in Arkansas down through the years and was restated in one of our more recent cases—*Gipson* v. *Ingram,* 215 Ark. 812, 223 S. W. 2d 595—in the following language: "In determining the answer to the posed question, we emphasize that the Legislature, as the supreme law-making body, possesses all legislative powers except those expressly or impliedly prohibited by the Constitution."

The appellants further argue that the effect of the Act 255—insofar as concerns mental anguish—is to overcome the quoted language of this Court in the Taylor case,

---

[6] Just as we speak of the first ten Amendments to the United States Constitution as the "Bill of Rights," so also we call Art. II of the Arkansas Constitution the "Bill of Rights." In some instances the said Art. II is a restriction on the Legislature, as when the questioned legislation violates the rights guaranteed in Art. II; but such is not the situation in the case at bar.

*supra.* It frequently happens that the Legislature passes laws to overcome decisions of this Court, which is one of the intended functions of the Legislative Department in our three department system of checks and balances. For example, Act 36 of 1957, compiled as § 34-1208.1, Ark. Stats., overruled the holding in *Cassen* v. *Cassen,* 211 Ark. 582, 201 S. W. 2d 585, and restored the rule with respect to what constitutes residence in a divorce action which had been stated in *Squire* v. *Squire,* 186 Ark. 511, 54 S. W. 2d 281. And yet in *Wheat* v. *Wheat,* 229 Ark. 842, 318 S. W. 2d 793, we upheld the Act 36 of 1957. In 11 Am. Jur. 899, Constitutional Law, § 196, in speaking of the extent of the legislative power, the rationale of judicial holdings is clearly stated:

"It is said that a person has no property or vested interest in any rule of the common law, and the powers of the legislature are in no manner limited or restricted by the common law of a particular state. A state undoubtedly has the constitutional and legislative power to change or modify the common law, for the Constitution does not forbid the creation of new rights or the abolition of old ones recognized by the common law to attain a permissible legislative object. Moreover, the mere grant of legislative power in a Constitution implies the right to change the common law. For example, changes may be made with reference to administrative and remedial processes, and a state may change the common law so as to create duties and liabilities which never existed before. Hence, it is not a valid objection to a statute that it creates a right of action and imposes a liability unknown to the common law."

We therefore hold that the said Act 255 is constitutional insofar as concerns the attack here made on it.

II. *Appellants Say: "Act 255 Of The Acts of 1957 Does Not Create Nor Confer A Cause Of Action For Mental Anguish. . . ."* In presenting this point, appellants urge: (a) that Section 1 of the Act 255 is a re-enactment of § 27-903, Ark. Stats., with only one sentence added; (b) that Section 1 of the Act did not create a new cause of action; and (c) that it is not until Section 4

of the Act 255—in considering damages—that mental anguish is first mentioned. Appellants then summarize: "Succinctly stated, the question presented is, can the Legislature create a cause of action by merely providing for an additional measure of damages? The answer should be obvious, that it takes a cause of action before an action can be brought, to which an element of damage could be applied. The creation of a new element of damage does not *ipso facto* create a new cause of action."

This very adroit argument can best be answered by a consideration of the law prior to the passage of the Act 255 in order to ascertain what conditions the Legislature was attempting to change. Under the common law, there could be no recovery in tort cases for mental anguish independent of physical injury. A classic example of this is the case of *C. R. I. & P. Ry. Co.* v. *Caple, Admr.,* 207 Ark. 52, 179 S. W. 2d 151. Furthermore, when the death of a little child was wrongful and the parents sued to recover, the recovery was limited to the net amount that the parents would gain from the earnings of the child during minority. There could be no recovery for grief and mental anguish of the parents of the deceased minor.[7] *L. R. & F. S. Ry. Co.* v. *Barker,* 33 Ark. 350, 34 Am. Rep. 44; *Interurban Ry Co.* v. *Trainer,* 150 Ark. 19, 233 S. W. 816; *St. L.-S. F. Ry. Co.* v. *Perryman,* 213 Ark. 550, 211 S. W. 2d 647.

To overcome the situation created by the foregoing holdings and to allow a recovery for mental anguish, there was passed Act 39 of 1949 and Act 115 of 1949, which Acts allowed recovery for mental anguish.[8] In the case of *Bockman* v. *Butler,* 226 Ark. 159, 288 S. W. 2d 597, we allowed a recovery for mental anguish—under Act 115 of 1949—to grandparents who stood in *loco parentis* to the child. The Committee on Jurisprudence and Law Reform

---

[7] In 14 A.L.R. 2d 485, there is an Annotation on "Measure and elements of damages for personal injury resulting in death of infant." There is also another Annotation in 14 A.L.R. 2d 550, entitled, "Excessiveness and inadequacy of damages for personal injury resulting in death of infant."

[8] In 3 Ark. L. Rev., p. 373, there is a discussion of the two acts of 1949.

of the Arkansas Bar Association gave further study to our wrongful death statute and submitted a report to the Association, which may be found in Volume 9 of the Arkansas Law Review at Page 105. A model bill was taken to the Legislature and, with changes made to incorporate some of the provisions of the Act 115 of 1949, became what is now Act 255 of 1957. We have already quoted the germane portions of this statute which relate to mental anguish. Act 115 of 1949 allowed a recovery for mental anguish, as we held in *Bockman* v. *Butler, supra,*[9] and the provisions of the Act 255 of 1957 contain practically the same language regarding mental anguish, as did Act 115 of 1949. Therefore, we reach the positive conclusion that it was the intention of the Legislature to allow recovery for mental anguish under the Act 255; and we find no merit in the appellants' argument on this point.

III. *Who May Recover Damages For Mental Anguish Under The Act 255.* In several points the appellant presents this question; and its determination is essential to a decision regarding several of the appellees. The Act says in the first sentence of Section 4 that recovery for mental anguish is "to the surviving spouse and next of kin of such deceased person." Then in the succeeding sentence, there is a limitation on the "next of kin" to "children, father and mother, brother, sister or persons standing in *loco parentis* to the deceased and persons to whom the deceased stood in *loco parentis.*" The first sentence limits mental anguish to the spouse and next of kin; and the succeeding sentence further limits the next of kin who may recover.[10] We revert to the words, "next of kin," as contained in the first sentence of Section 4 of the Act because those words serve to exclude some of the persons who obtained verdicts and judgments in the case at bar. When

[9] In *Delong* v. *Green,* 229 Ark. 100, 313 S. W. 2d 370, we had occasion to briefly refer to this matter. See also *Strahand* v. *Webb,* 231 Ark. 426, 330 S. W. 2d 291.

[10] Section 5 of the Act 255 relating to settlements authorized by the Probate Court has no application to the case at bar since the verdicts and judgments here involved were not obtained through probate settlements.

the Legislature used the words "next of kin" in Act 255, those words already had a definite legal meaning. In *Law v. Wynn,* 190 Ark. 1010, 83 S. W. 2d 61, this Court construed the words "next of kin" as used in § 1075 C. & M. Digest (which became § 27-904, Ark. Stats.) ; and held that "next of kin" meant the same as "heirs at law."[11] We therefore conclude that the damages to be recovered for mental anguish under Act 255, are limited to the *heirs at law,* as further limited by the sentence in Section 4 following the reference to next of kin. If there are living children of a deceased, then any recovery for mental anguish must be for the widow and said children, and cannot be for the father and mother, or brothers and sisters. That is the effect of the use of the words "next of kin" in the Act here involved. Only when there are no living spouse and children of the deceased, can the parents or brothers and sisters recover for mental anguish. Applying this conclusion to the verdicts and judgments awarded in the case at bar, brings these results:

A. For the death of Mr. E. H. Eubanks, there was a recovery of mental anguish damages by his daughter, Mrs. Gene Frances Oliger, as his *next of kin;* so there could not also have been a recovery of mental anguish damages by his married sister, Mrs. Luther Drake, since she was not, at that time, his *next of kin.* The Trial Court should have instructed a verdict against Mrs. Luther Drake as prayed by appellants.

B. For the death of Mrs. Blanch Eubanks, there was a recovery of mental anguish damages by her daughter, Mrs. Gene Frances Oliger, as her *next of kin;* so there could not also have been a recovery of mental anguish damages by Mrs. Fannie Oliphant, as mother of Mrs. Eubanks; or by Mrs. Ione Brewer, as sister of Mrs. Eubanks or by Vernon Tolbert, as brother of Mrs. Eubanks. The Trial Court should have granted appellants' prayer for instructed verdicts against Mrs. Oliphant, Mrs. Brewer,

---

[11] There is an annotation in 112 A.L.R. 30, supplemented in 171 A.L.R. 204, entitled, "Division among beneficiaries of amount awarded by jury or received in settlement upon account of wrongful death." See also discussion in 11 Ark. L. Rev. 68. In Words and Phrases, there are a number of cases construing the words, "next of kin."

and Mr. Tolbert for damages for mental anguish for the death of Mrs. Eubanks.

C. For the death of Mrs. Connie C. Henley, there was a recovery of mental anguish damages by Mrs. Leta Ring, the foster daughter, as *next of kin*. The evidence is uncontradicted that Mrs. Henley was the foster mother of Mrs. Leta Ring and stood in *loco parentis*[12] to her. So Mrs. Ring became entitled under the Act 255 to stand as *next of kin*. There could not also have been a recovery of mental anguish damages by Mrs. Luther Drake, as the sister of Mrs. Henley, since Mrs. Leta Ring, as foster daughter stood as *next of kin*. The Trial Court should have granted the appellants' prayer for an instructed verdict against Mrs. Luther Drake for mental anguish damages for the death of Mrs. Henley.

It follows, therefore, from what has been herein stated, that the following judgments for mental anguish damages are set aside and dismissed, to-wit: Mrs. Luther Drake for mental anguish damages for the death of Mr. Eugene H. Eubanks; Mrs. Fannie Oliphant, Mrs. Ione Brewer, and Mr. Vernon Tolbert, for mental anguish damages for the death of Mrs. Blanch Eubanks; and Mrs. Luther Drake for mental anguish damages for the death of Mrs. Connie C. Henley.

IV. *The Excessiveness Of The Remaining Verdicts.* Appellants claim that each of the remaining mental anguish verdicts is grossly excessive; and this requires a consideration of what is *mental anguish*. The Act No. 255 does not define "mental anguish," but the Arkansas Legislature, in allowing a recovery for mental anguish, undoubtedly used the words as they had been construed by this Court. In *Western Union Tel. Co.* v. *Archie,* 92 Ark. 59, 121 S. W. 1045, Mr. Justice Hart, speaking for this Court, said: "As held in the cases of *McAllen* v. *Western Union Tel. Co.,* 70 Tex. 243, and *Morrison* v. *Western Union Tel. Co.,* 24 Tex. Civ. App. 347, in order to recover

---

[12] Section 4 of the Act 255 contains a provision about *"loco parentis"* that is not found in our general statutes of descent and distribution (§ 61-101, Ark. Stats.); but what we have said herein applies to recovery of mental anguish under the Act 255.

damages under the mental anguish doctrine, it is necessary that the mental anguish suffered be real and with cause, and not merely the result of a too sensitive mind or a morbid imagination." And in *Western Union Tel. Co.* v. *McKenzie,* 96 Ark. 218, 131 S. W. 684, 49 L.R.A., N.S., 296, in an opinion written by Mr. Justice Frauenthal, it is said: "It will thus be seen that the mental anguish for which a recovery can be had must not consist simply of annoyance or disappointment or a suffering of the mind growing out of some imaginary situation, but it must be some actual distress of mind flowing 'from the real ills, sorrows and griefs of life.' "

Other Courts throughout the nation, as well as the law book text writers generally, have discussed the words, "mental anguish." In Black's Law Dictionary, in speaking of mental anguish as a ground for damages, it is said that mental anguish "includes the mental suffering resulting from the excitation of the more poignant and painful emotions, such as grief, . . . despair. etc." "Anguish" is therein defined as, "Extreme pain, . . . agony; distress; . . ., pain of mind." In *Hancock* v. *Western Union Tel. Co.,* 137 N. C. 497, 49 S. E. 952, 69 L. R. A. 403, the North Carolina Supreme Court said that there is a very material difference between disappointment and regret and that keen and poignant mental suffering signified by the words, "mental anguish." In short, the Legislature, in allowing recovery for mental anguish, meant something more than recovery for the normal grief occasioned by the loss of a loved one. To be grieved or to be shocked by the death of a loved one is natural, but in order to recover under the Act No. 255, one must suffer more than the normal grief. The Court did not give an instruction defining "mental anguish", and did not indicate to the jury the difference between normal grief and "mental anguish"; and we conclude that the jury, in giving the amounts which it did, was moved by evidence of normal grief as much as by evidence of mental anguish.

With the foregoing to guide us, we consider the remaining verdicts.

A.

The jury returned a verdict for Mrs. Gene Frances Oliger for $12,500.00 for mental anguish[13] for the death of her father, Mr. Eubanks; and also a like verdict for $12,500.00 for mental anguish for the death of her mother, Mrs. Eubanks. Were these two verdicts, totalling $25,000.00, grossly excessive? Mr. Eubanks was 76 years of age and Mrs. Eubanks was 69 years of age, and they were both killed almost instantly. Mrs. Oliger, their only child, was 31 years of age, married, and living with her husband in Morrilton; but the relationship between Gene Frances Oliger and her parents was extremely close. When she learned of their death, she fainted. She was with her father and mother nearly every day in the hardware store which they owned and operated in Morrilton; and she had been on a picnic with them on the day of the tragedy. Even taking into consideration the close relationship of this lady with her parents, and the evidence of her grief and anguish, we conclude that a recovery of $7,500.00[14] for mental anguish resulting from the death of each parent would be correct, and that any amount above that amount is grossly excessive.

B.

The jury returned a verdict for mental anguish damages for $2,000.00 to *each* of the five children of Mr. Albert Henley because of his death. These children are: Homer Henley, Willett Henley, Hugh Henley, Mrs. Irene Abbott, and Albert Henley. Were these verdicts, totaling $10,000.00 grossly excessive? As previously stated, their father was 81 years of age. Three of his sons lived in California, one lived in the State of Washington, and the daughter, Ione Abbott, lived in Rapid City, South Dakota. Homer Henley and Willett Henley, aged 49 and 46 respectively, did not appear at the trial of this case and did not testify that they suffered any mental anguish at

[13] Since the jury found that Mr. Eubanks was guilty of 45% of the negligence, her verdict of $12,500.00 was reduced to $6,875.00, as shown in Footnote No. 2.

[14] Recovery for the death of Eugene H. Eubanks is to be diminished in proportion to his contributory negligence as determined by the jury.

all. Neither did they attend their father's funeral. One of the other brothers testified that Homer and Willett were "shocked and grieved as we were." Under the definition of "mental anguish," as herein set out, we cannot see how any recovery can be sustained for Homer Henley and Willett Henley, and, as to them, the verdicts are set aside and the judgments reversed and dismissed. Hugh Henley was 43 years of age, married, and lived in Long Beach, California; Mrs. Ione Abbott, a married daughter, was 39 years of age and lived in Rapid City, South Dakota; and Albert Henley was 38 years of age, married, and lived in Garden Grove, California. Each of these people testified at the trial that their father's death was "quite a shock" to them. Their father and their own mother were separated in 1936, and some of them had not seen their father in four or five years. There were no close ties or associations. They were separated by miles, and by years of absence from their father. It is a very close question whether they are entitled to any recovery for mental anguish, but, at most, we are convinced that any verdict in excess of Five Hundred Dollars ($500.00) each, to Hugh Henley, Albert Henley, and Mrs. Ione Abbott, would be grossly excessive.

## C.

The jury returned a verdict for $10,000.00 for Mrs. Leta Ring for mental anguish damages because of the death of her foster mother, Mrs. Henley. Was this verdict grossly excessive? Mrs. Leta Ring was 51 years of age at the time of the trial. When her own mother died, Mrs. Ring was four or five years of age, and Mrs. Henley took the little girl to raise. Mrs. Henley made a wonderful mother. After Mrs. Ring married, she continued to live in Morrilton near Mrs. Henley and saw her every day. Mrs. Henley was with her when Mrs. Ring's first husband died. In 1955, Mrs. Ring married again and moved to West Memphis, but she continued to write Mrs. Henley twice a week and, when she did not hear from her foster mother, she telephoned her. Mrs. Ring was so grieved with the passing of Mrs. Henley that she suf-

fered what was almost a nervous breakdown. Under all of these facts, and other detailed in the record, we cannot say that the verdict in favor of Mrs. Ring for $10,000.00 was so grossly excsssive as to shock the conscience.

If remittiturs be entered as stated in this Topic IV within seventeen calendar days, then the judgments discussed in this topic will be affirmed for the amounts herein stated; otherwise, the judgments in this Topic IV will be reversed and the causes remanded, with the exception of the judgment in favor of Mrs. Leta Ring, which is affirmed.

GEORGE ROSE SMITH, J., dissenting. I am unable to agree with Part III of the majority opinion, which puts a limitation upon the beneficiaries who are permitted to recover damages for mental anguish. As I read Act 255 of 1957 the legislature meant to retain the existing limitation upon the beneficiaries who may recover damages for the *pecuniary injuries* resulting from a wrongful death, but no similar limitation was intended with respect to the beneficiaries recovering damages for *mental anguish*.

Under the law as it existed before the enactment of Act 255 of 1957 the cause of action for wrongful death was confined to "pecuniary injuries," and the recovery was plainly for the benefit of the widow and the next of kin or heirs at law. The statute provided that if there should be no personal representative the action might be brought by the heirs at law, and it directed that the amount recovered be distributed "to such widow and next of kin, in the proportion provided by law in relation to the distribution of personal property left by persons dying intestate." Act 53 of 1883; Ark. Stats. 1947, § 27-904.

In the case cited by the majority, *Law v. Wynn,* 190 Ark. 1010, 83 S. W. 2d 61, the court simply held that the effect of the statutory language just summarized was to vest the right to recover for wrongful death in all the heirs at law or next of kin of the decedent, whether or not they had been dependent upon him for support. This

language in the opinion discloses the basis for the court's conclusion: "It is not reasonable to suppose that the Legislature would create or vest a right to bring a suit at law in a class of persons [the heirs at law] who had no interest in the subject-matter thereof or in the proceeds of recovery. It evinces a legislative intent to vest the cause of action in the heirs at law of the deceased person in whom the rights of inheritance would vest under general law, had the deceased died intestate. Moreover, the language which follows, 'shall be distributed to such widow and next of kin in proportion provided by law in relation to distribution of personal property left by persons dying intestate,' evinces a clear and unmistakable intent to distribute the net recovery in all such actions to the heirs at law of such deceased persons as is provided by general law of descent and distribution and not to a restricted class of persons, as contended by appellee."

Act 255 must be read in the light of its statutory background. Section 1 of the act re-enacts the existing provision that the cause of action for wrongful death shall survive, with an additional clause to the effect that the cause of action also survives the death of the tortfeasor. Ark. Stats., § 27-906. Section 2 provides that the action shall be brought in the name of the personal representative, or if there be none then by the heirs at law. § 27-907. Section 3 places a limitation upon the heirs at law who may recover for the beneficiaries of the act are confined by this section to the surviving spouse, children, father and mother, brothers and sisters, and persons standing *in loco parentis*. § 27-908. The act does not contain the former provision that the recovery be distributed pursuant to the law of descent and distribution.

We come now to § 4 of the act, which controls the point now at issue. Its language must be studied carefully: "The jury, or the Court in cases tried without a jury, may fix such damages as will be fair and just compensation for the pecuniary injuries, including a spouse's loss of the services and companionship of a deceased spouse and/or mental anguish resulting from such death,

to the surviving spouse and next of kin of such deceased person. However, when mental anguish is claimed as a measure of damages under this statute, such mental anguish will be applicable only to the surviving spouse, children, father and mother, brother, sister or persons standing *in loco parentis*. . . ." § 27-909.

My disagreement with the majority centers upon this sentence in their opinion, which contains the heart of the court's reasoning: "The Act says in the first sentence of Section 4 that recovery for mental anguish is 'to the surviving spouse and next of kin of such deceased person.' "

I cannot so read the first sentence in § 4 of the act. The only reference to mental anguish in that sentence is in a clause, set off by commas, which relates only to the surviving spouse. When this clause is eliminated it will be seen that the first sentence in § 4 deals only with pecuniary injuries: "The jury, or the Court in cases tried without a jury, may fix such damages as will be fair and just compensation for the pecuniary injuries . . . . . to the surviving spouse and next of kin of such deceased person." Thus this sentence, except for the clause set off by commas, is a re-enactment of the former statute with respect to the recovery of compensation for the pecuniary injuries to the surviving spouse and the next of kin.

The recovery for mental anguish, as distinguished from pecuniary injuries, is treated in the second sentence in § 4, and this sentence makes no reference either to the next of kin or to the heirs at law: "However, when mental anguish is claimed as a measure of damages under this statute, such mental anguish will be applicable only to the surviving spouse, children, father and mother, brother, sister or persons standing *in loco parentis*. . . ." While we are not called upon to supply a reason for a policy plainly expressed by the legislature, it is easy to see why the lawmakers saw fit to permit all members of the class to recover for mental anguish. Such agony is a personal experience, peculiar

to each of the beneficiaries of the act, and has nothing to do with the law of descent and distribution. A mother, for example, would suffer the same mental anguish upon the wrongful death of her son whether he died with or without children. Consequently it is logical and fair to allow all the beneficiaries of the act to recover for the mental anguish that they suffer.

If there were any doubt about the legislative intention it sh, uld be set at rest by this language in § 5 of the act: ''Nothing in this act shall limit or affect the right of Probate Courts having jurisdiction to approve or authorize settlement of claims or causes of action for wrongful death, but the Probate Courts shall consider the best interests of all the beneficiaries under this act and not merely the best interest of the widow and next of kin as now provided by Section 8 of Act 255, Acts of 1951.'' § 27-910. I do not agree with the observation in Footnote 10 to the majority opinion, that § 5 of the act has no application to the case at bar because the verdicts and judgments were not obtained through probate settlements. Section 5 is part of the act and certainly must be taken into account in arriving at the legislative intention.

By § 5 the probate courts, in approving settlements, are directed to consider the best interests of all the beneficiaries of the act ''and not merely the best interest of the widow and next of kin'' as previously provided by law. The plain effect of the majority opinion is to read this clause out of the statute, because the recovery both for pecuniary injuries and for mental anguish is being limited to the surviving spouse and the next of kin. How, then, is it possible for the probate courts to consider the best interests of all the beneficiaries of the act rather than merely the best interest of the widow and next of kin? The statute can be given effect only if all the beneficiaries of the act are allowed to recover for mental anguish as distinguished from pecuniary injuries. Consequently I am compelled to conclude that the legislature did not intend to restrict the cause of action for mental

anguish to those beneficiaries of the act falling within the definition of next of kin or heirs at law.

Johnson, J., joins in this dissent.