**Billie Mae WEBB, As Special Administratrix of the Estate of Johnny Lee Graham, Deceased, Plaintiff,**

v.

**Clyde HARVELL, Defendant.**

Civ. No. 82–2085.

United States District Court, W.D. Arkansas, Fort Smith Division.

May. 2, 1983.

Eugene A. Wahl, Jr. and Jim Spears, Fort Smith, Ark., for plaintiff.

S. Daniel George, Sallisaw, Okl., William M. Cromwell, Rose, Kinsey & Cromwell, Fort Smith, Ark., for defendant.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

On January 29, 1982, in Van Buren, Arkansas, the plaintiff's decedent, Johnny Lee Graham, was shot and killed by defendant, Clyde Harvell. On April 1, 1982, the plaintiff, the Special Administratrix of his estate, filed suit in this court under the provisions of Arkansas' Wrongful Death Statute (Ark.Stat.Ann. § 27–906 *et seq.*). The suit was filed for the benefit of the estate, and in behalf of the beneficiaries authorized to recover by Ark.Stat.Ann. § 27–908. The beneficiaries seeking to recover were two sisters of the decedent, and Randy Treadway, a minor child. The evidence is not clear as to his age, but it appears that at the time of trial, he was approximately seven. The complaint filed by the plaintiff prayed for damages in behalf of the decedent's beneficiaries for "pecuniary injuries and mental anguish" in the amount of $25,-000.00, and, in behalf of the estate, for hospital, medical, funeral expenses and pain and suffering in the amount of $10,000.00. In addition, plaintiff sought punitive damages against the defendant in the amount of $50,000.00.

The defendant answered and counterclaimed for injuries suffered by him in the

altercation which led to the shooting, praying for damages of $75,000.00.

The case was tried to a jury on April 4 and 5, 1983. . The evidence elicited at the trial in relation to the events which led to the shooting and the damages suffered by the beneficiaries of decedent was greatly in dispute, but all parties agreed that one of the persons in behalf of whom the suit was filed, Randy Treadway, was the natural-born child of the decedent. It was also agreed that Randy had been adopted by Joan Treadway, one of decedent's sisters, when he was an infant (again, the evidence is unclear as to his exact age at the time), and that he had continued to live with this sister for all of his young life and was living with her at the time of decedent's death. His natural mother had been killed in an automobile accident when he was an infant. It was also agreed that during a good portion of Randy's life, Johnny Lee Graham had resided in various penitentiaries and, in fact, had been released from a penitentiary only a short time before his death. Because of his incarceration and for other reasons, Randy had not lived with his natural father for any substantial portion of his life.

At the close of plaintiff's evidence and at the close of all the evidence in the case, the defendant moved for a directed verdict on several grounds and specifically included the contention that sufficient evidence had not been elicited to allow the jury to consider the question of whether Randy was entitled to an award of mental anguish. In this respect, defendant argued that Randy Treadway, having been adopted by decedent's sister, was not one of the persons allowed to recover by the provisions of Ark. Stat.Ann. § 27–908. In addition, it was argued that there was not sufficient evidence that Randy Treadway had suffered more than the normal grief required in order to recover under the Arkansas Supreme Court's interpretation of Ark.Stat.Ann. § 27–909. *See, for example, Peugh v. Oliger,* 233 Ark. 281, 345 S.W.2d 610 (1961). The court denied both of the motions and allowed the jury to consider the question of damages suffered by both the sisters and by Randy Treadway resulting from the mental anguish suffered. In addition, the jury was allowed to consider the estate's claim for reasonable value of funeral expenses and for medical expenses attributable to the fatal injury. The question of punitive damages was also submitted to the jury.

After deliberation, the jury returned a verdict awarding the estate $2,000.00 for the funeral and medical expenses and awarding to Randy Treadway the sum of $35,000.00 for his mental anguish suffered. Although the jury was allowed to consider the claim of the two sisters, Billie Mae Webb and Joan Treadway, the jury returned no verdict in their favor, and no punitive damages award was made.

Under the provisions of Rule 50 of the Federal Rules of Civil Procedure, defendant filed a motion for judgment notwithstanding the verdict or, in the alternative, for a partial new trial. Plaintiff has responded, and the Court is now prepared to rule.

In his brief in support of the motion for judgment notwithstanding the verdict, the defendant advances two arguments, both of which the Court believes have merit. The contentions may be summarized as follows:

(a) That Randy Treadway, having been adopted by another, is not a "beneficiary" as that term is defined by Ark.Stat.Ann. § 27–908.

(b) That even if Randy Treadway is a beneficiary as defined by that statute, the evidence that his grief was more than normal was not sufficient to allow that issue to be submitted to the jury. These contentions will be discussed in turn.

Ark.Stat.Ann. § 27–908 provides:

The beneficiaries herein are the surviving spouse of the deceased person, children, father and mother, brothers and sisters, persons standing *in loco parentis* to the deceased person, and persons to whom the deceased stood *in loco parentis.*

Defendant argued that, because of the provisions of the Revised Uniform Adoption Act in force in Arkansas at the time (Ark. Stat.Ann. § 56–201 *et seq.*), and specifically because of the provisions of Ark.Stat.Ann.

§ 56–215 of that statute, Randy Treadway was not a person entitled to recover under the Wrongful Death Statute since, under the law, he was no longer the child of the decedent, but was, instead, the child of his adopted parents, the Treadways. It is argued that since he is not a child of the decedent, he may not recover under the statute unless Randy was a person "to whom the deceased stood *in loco parentis*," and that the evidence does not support a jury verdict on this basis.

In response, plaintiff argues, in effect, that, irrespective of the adoption, Randy Treadway was the child of decedent and that the Revised Uniform Adoption Act should not be considered in construing and applying the Wrongful Death Statute. It is contended alternatively that even if he is not a child of the decedent, the deceased stood *in loco parentis* to him and, thus, Randy is entitled to recover on that basis.

The Court has carefully considered the briefs of the parties, and has determined that the provisions of Ark.Stat.Ann. § 27–908 and Ark.Stat.Ann. § 56–215, when read together, lead to no reasonable conclusion but that Randy was not, at the time of Johnny Lee Graham's death, his child. Ark. Stat.Ann. § 56–215, which is section 15 of the Revised Uniform Adoption Act, provides, in pertinent part, as follows:

A final decree of adoption and an interlocutory decree of adoption which has become final, whether issued by a court of this state or of any other place, have the following effect as to matters within the jurisdiction or before a court of this state:

(1) . . . and to terminate all legal relationships between the adopted individual and his relatives, including his natural parents, so that the adopted individual thereafter is a stranger to his former relatives for all purposes including inheritance and the *interpretation* or *construction* of documents, *statutes* and instruments . . . (emphasis supplied).

A plain reading of this provision of the adoption act dictates only one conclusion. That conclusion is that an adoption not only terminates all legal relationships between the adopted individual and his natural parents and legally makes him a stranger to them, it also commands that all courts, including this one, recognize that principle in construing all statutes. Since that is the case, the Court believes that, in construing Ark.Stat.Ann. § 27–908, this provision of the adoption act requires that Randy Treadway be considered to be a stranger to his natural father. No other conclusion seems reasonable. The adoption act specifically says that, in construing statutes, the Court shall determine that there is no legal relationship existing between the natural parent and the adopted child, and must (not may) consider that child as a complete stranger to the natural father. Since that is the case, Randy Treadway was not the child of Johnny Lee Graham at the time of his death and he was not one of the persons which Ark.Stat.Ann. § 27–908 authorizes to recover for mental anguish, unless it can be said that the deceased stood *in loco parentis* to him.

After considering the evidence, the Court is convinced that it falls woefully short of establishing a *loco parentis* relationship at the time of the death of Johnny Lee Graham. *Loco parentis,* as defined in Black's Law Dictionary (rev. 4th ed.) means "in the place of a parent; instead of a parent; charged, factitiously, with a parent's rights, duties, and responsibilities." 59 Am.Jur.2d *Parent and Child* § 88 explains the relationship necessary as follows:

A person is said to stand *in loco parentis* when he puts himself in the situation of a lawful parent by assuming the obligations incident to the parental relation without going through the formalities necessary to a legal adoption. (citing cases.)

Although there are no Arkansas cases directly on point, the relationship necessary is discussed in *Moon Distributors, Inc. v. White,* 245 Ark. 627, 434 S.W.2d 56 (1968), and *Nelson v. Shelly,* 268 Ark. 760, 600 S.W.2d 411. A reading of those cases makes it evident that, in order to find a *loco parentis* relationship, the Arkansas court

has required a showing of a relationship which fits the requirements of the definitions quoted above.

■ Since that is the case, the Court believes that the evidence in this respect is simply not sufficient to support a finding that Johnny Lee Graham at the time of his death stood in a *loco parentis* relationship to Randy Treadway. The undisputed evidence was that Randy Treadway had not lived with his natural father for a number of years and that the natural father not only agreed that he could be adopted by Joan Treadway, but did not carry out any of the normal duties of a father, and did not assume any of the obligations incident to a proper parental relationship. He only saw the child rarely, at least while he was in prison, and even though at the time of his death there appeared to be no reason for the child not to live with him if that was his desire, he did not do so. There was no evidence offered indicating that Graham had, at any time, contributed anything to Randy's support. At the time of his death, Johnny Lee Graham was neither the legal parent of Randy Treadway, nor did he stand in a parental relationship with him since he did not even attempt to exercise any of the duties or responsibilities of a parent. Those duties had been delegated, both legally and as a practical matter, to the Treadways. For these reasons, the Court is constrained to conclude that the evidence fell considerably short of a showing that, at the time of the death of Johnny Lee Graham, Randy Treadway was a beneficiary entitled to recover under the Arkansas Wrongful Death Statute. The Court finds that, without considering credibility or otherwise weighing the evidence, reasonable minds could not differ in this respect.

■ As to the question of whether the record shows that Randy Treadway suffered more than normal grief, as is required by Arkansas law to recover for mental anguish, the evidence is equally deficient. The law in Arkansas since shortly after the adoption of the Arkansas Wrongful Death Statute in 1957 has been that, to warrant recovery for mental anguish resulting from

a death, it must be real and with cause and must cause one to suffer more than normal grief. *Beaty v. Buckeye Fabric Finishing Co.,* 179 F.Supp. 688 (E.D.Ark.1959); and *Peugh v. Oliger, supra.* That is clearly still the law in Arkansas. *See Arkansas Model Jury Instruction 2215.*

■ In this respect, the Court is constrained to find that the evidence in this case does not support a $35,000.00 award of mental anguish to Randy Treadway, even if he was a person entitled to recover under the provisions of Ark.Stat.Ann. § 27–908. The evidence was sparse, to say the least, in this respect. As indicated above, Randy Treadway was not living with his natural father at the time; had been adopted by another with the consent of his natural father and was being reared and cared for by his adoptive parents at such time; and had never lived for any substantial period of time with the deceased. In addition, the only evidence which indicated any grief was the testimony of the adoptive mother, Joan Treadway. Her testimony in this respect was:

Q. How did Randy take this?

A. Well we told him on a Saturday night because everybody was coming to the house and calling and I told him that a piece of metal had hit my brother. I didn't tell him he had been shot—and he cried, you know, and he hugged my neck and my husband's neck and told us he wanted to be alone for a little while, and we left him alone and then we went in and he asked us why, and I told him a piece of metal had hit Johnny. And then about 3 or 4 days later I had to tell him the truth because of the news media and the people and the funeral. And he just couldn't believe it—he believed but he didn't believe it.

Q. Did that affect his ability to sleep?

A. Yes. And then we had to hire a tutor to come to our house in the summer and tutor Randy because his grades just dropped and he got hos-

tile. And he would say: "My mamma's dead and my daddy's dead" and then he asked me—he said: "Mommie, will you please don't die and leave me. It would be so lonesome around here without you. I would have no one to play with." And I said: "Baby, I can't tell you I won't die." I said: "I hope to live to be 190 so I can see your grandchildren, or my grandchildren" and then he just threw his arms around me and we cried. And we talk about it now.

Q. How are you doing now?

A. We are doing better, but it is still hard.

That was the only testimony relative to any degree of grief suffered by Randy Treadway and the Court finds that is simply not enough to carry the burden imposed by the Arkansas cases construing this statute. The evidence in that respect was certainly no greater than that present in the case of *Dobson v. Bacon Transportation Co.,* 607 F.2d 805 (8th Cir.1979), in which the Court of Appeals affirmed the trial court's finding that the evidence in that case did not sufficiently demonstrate that the sons had suffered greater than normal grief due to the loss of their father.

## CONCLUSION

The Court recognizes that motions for a judgment notwithstanding the verdict should be sparingly granted since, to do so, deprives the party of a determination of the facts by a jury. *See* Wright & Miller, *Federal Practice and Procedure: Civil* § 2524. In that respect, as indicated in that article, the question that the Court must determine is: "... whether the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable men could have reached." *Simblest v. Maynard,* 427 F.2d 1, 4 (2d Cir.1970). *See also Parker v. Seaboard R.R.,* 573 F.2d 1004 (8th Cir.1978), and *Dobson v. Bacon, supra.*

Recognizing this, the Court considered the possibility and advisability of merely granting a new trial on this issue, since the test for doing so is substantially easier to meet than the test required to grant a judgment notwithstanding the verdict. As indicated in Wright & Miller, *Federal Practice & Procedure: Civil* § 2538, the Court has discretion to order a new trial rather than to grant a judgment n.o.v. if it believes that the defect in the proof might be remedied on a second trial, or if needed evidence was ruled out by some error of the court. However, after giving the matter consideration, the Court believes, simply stated, that the interest of justice is not served by granting a new trial on this issue and, thus, to require the parties to undergo another trial. It appears that there could have been no additional proof elicited at the trial which would have changed the fact that the Arkansas Wrongful Death Statute does not allow an adopted child to recover from his natural parents, nor any evidence that could have been adduced to show that Johnny Lee Graham, at the time of his death, stood in a *loco parentis* relationship with Randy Treadway. That is true because the "facts," regardless of how they are developed, simply do not support a finding that Ark.Stat.Ann. § 27–908 allows Randy Treadway to recover in a wrongful death action. Since that is true, a new trial would serve only to burden the parties with the expenditure of the additional time and money necessary for another trial. Being perfectly frank, the Court was reluctant to grant a judgment n.o.v. and diligently searched to find a reason to sustain the jury verdict in this case, but, for the reasons stated above, simply believes that it has no alternative but to reach the conclusion reached. For this reason, a judgment notwithstanding the verdict as to the minor child's claim will be entered, and the matter dismissed with prejudice. The jury verdict in favor of the Estate will not be affected and judgment will be entered in its favor pursuant to the verdict.

Rule 50(c) of the Federal Rules of Civil Procedure provides that, where a judgment notwithstanding the verdict is rendered, the Court will also rule conditionally on any

motion for a new trial that is pending. Defendant's motion prayed, alternatively, for a new trial. In the event that this judgment is vacated or reversed on appeal, a new trial is granted as to the claim of Randy Treadway. The reasons for doing so are the same as the reasons for granting the judgment notwithstanding the verdict discussed above.