Honorable Jim Lendall State Representative 10625 Legion Hut Road Mabelvale, Arkansas 72103
Dear Representative Lendall:
This is in response to your request for an opinion concerning Amendment 7 to the Arkansas Constitution, and the circulation of initiative and referendum petitions. Specifically, you have noted that Amendment 7, under the section entitled "The Petition" and the paragraph entitled "Unwarranted Restrictions Prohibited", provides in pertinent part as follows:
 No law shall be passed to prohibit any person or persons from giving or receiving compensation for circulating petitions, nor to prohibit the circulation of petitions, nor in any manner interfering with the freedom of the people in procuring petitions;. . ." [Emphasis yours.]
You then ask whether this provision permits the circulation of initiative or referendum petitions on private and public university campuses, fairgrounds, (specifically, the Arkansas State Fair), shopping centers/malls, and at businesses, hospitals and state agencies (or their parking lots).
You also ask whether this provision of Amendment 7 applies to the circulation of nominating petitions for "political party and independent candidates".
It is my opinion that your questions must necessarily involve not only a construction of that portion of Amendment 7 set out above, but also relevant analysis under theFirst Amendment to the United States Constitution, (the free speech and association provisions). With reference to some of the prospective signature collecting places you have mentioned, these two constitutional provisions may overlap. To the extent they overlap, we must determine whether the protection afforded under each is coextensive, or whether our Arkansas Constitution provides more expansive constitutional safeguards than theFirst Amendment. Our constitutional provisions must be at least as expansive as the federal constitution. If not, they are unconstitutional under the U.S. Constitution. The Arkansas Constitution may, however, provide more expansive protection than the federal constitution. Oregon v. Hass, 420 U.S. 714 (1975). With respect to other prospective signature collecting places, there may, under U.S. Supreme Court doctrine, be noFirst Amendment protection afforded, and the issue becomes one of whether our own Arkansas Constitution provides constitutional safeguards in the area of initiative and referendum signature collecting where the U.S. Constitution does not.
Toward this end, and in answering your multi-part first question, we will set out each prospective signature gathering place you have mentioned and attempt to analyze each under both the federal constitution and relevant Arkansas Constitutional provisions, including the provision of Amendment 7 you have noted. We should point out, however, that in responding to your first question, we can only set out the relevant constitutional doctrine as applied in various cases construing these provisions. No definitive answer to your questions can be given, because the definitive resolution of your ultimate questions will depend greatly upon an encompassing view of the particular facts in each instance. Because your question is drafted in the abstract, we can merely set out the relevant constitutional tests to be applied and engage in a general discussion of the legal issues arising.
You have first inquired whether the provision of Amendment 7 you have noted grants a right to circulate initiative and referendum petitions on private and public university campuses.
Let us first discuss public universities and the implications of the First Amendment to the U.S. Constitution which provides that:
 Congress shall make no law. . . abridging the freedom or speech, or of the press; or of the right of the people peaceably to assemble, and to petition the government for a redress of grievances.
As can be seen by the language of this amendment, ("Congress shall make no law"), the amendment prohibits congressional action. The amendment is applicable to the states through the Fourteenth Amendment, (Duncan v. Louisiana, 391 U.S. 145
(1968), and Gitlow v. New York, 268 U.S. 652 (1925), and prohibits "state action" as well. In cases involving public universities, which are state supported, there is the requisite "state action" and the provisions of theFirst Amendment are applicable. Healy v. James, 408 U.S. 169
(1972). This office has previously opined that the collecting of signatures on petitions is a form of speech which is protected under the First Amendment. See Opinion No. 84-161, a copy of which is enclosed. See also United States v. Cruikshank, 92 U.S. 542 (1875), and more recently Alderwood v. Washington Environmental Council, 96 Wn.2d 230, 635 P.2d 108 (1981). Under the First Amendment, the degree of protection afforded depends upon the place where the speech takes place. It has been held that certain areas of public universities are "public forums" requiring heightened review. Widmar v. Vincent, 454 U.S. 263 (1981). Under such circumstances, the university may make reasonable time, place, or manner restrictions on the exercise of speech that are 1) content neutral 2) narrowly tailored to serve a significant government interest, and 3) leave open ample alternative channels of communication. Additionally, a university official may not have unlimited discretion as to the implementation of the time, place and manner restrictions. Under the First Amendment, it is my opinion that a person has a right to solicit signatures on an initiative or referendum petition on certain "public forums" of public university campuses, but that person is subject to valid time, place, and manner restrictions.
It is my opinion that the language of our Arkansas Constitution would be construed similarly in these instances. There are several provisions which must be considered. Article 2, 4 is entitled "Right of assembly and petition" and provides that:
 The right of the people peaceably to assemble to consult for the common good, and to petition, by address or remonstrance, the government, or any department thereof, shall never be abridged.
Additionally, Article 2, 6 of our constitution provides in pertinent part as follows:
 The free communication of thoughts and opinion is one of the invaluable rights of man; and all persons may freely write and publish their sentiments on all subjects, being responsible for the abuse of such right.
Finally, the provision of Amendment 7 which you have noted must be considered.
It is my opinion that with respect to "public forums", where protection is provided under the First Amendment to the United States Constitution, our Arkansas Supreme Court would construe all of these provisions as coextensive with theFirst Amendment. That is, they provide protection against rights in public forums subject to reasonable time, place and manner restrictions. It is my opinion that our Arkansas Supreme Court would not construe the language of Amendment 7 ("no law shall be passed to prohibit the circulation of petitions, nor in any manner interfering with the freedom of the people in procuring petitions") as abrogating the right of a public university to fashion reasonable time, place and manner restrictions. That is, it is my opinion that the court would not construe that language as granting an unlimited right of the people of Arkansas to collect signatures on public university campuses in any area, at any time, and in any manner they wished, no matter what the disruption to university purposes would be.
The language of Amendment 7 which you cite can be read, by its plain import, to prohibit the General Assembly from passing a law curtailing the right of the people to circulate or procure petitions. Reasonable time, place, and manner restrictions, adopted by a public university, would not, in my opinion, fall within this prohibition. If the General Assembly were to pass a law providing that "no initiative or referendum petitions are to be circulated on Mondays, Wednesdays or Fridays," it is clear that this law would violate the provision of Amendment 7 to which you sight. Of course, there is a broad range of possible scenarios which could fall between this egregious a law and reasonable time place and manner restrictions enacted by a state university. It is my opinion, however, that our Arkansas Supreme Court would not construe the Amendment 7 language as abrogating any right of a public university to make time, place, or manner restrictions. Whether these restrictions will be viewed more stringently under Amendment 7 by our court, however, than they would be under the First Amendment, is a question which will have to be left to the Arkansas Supreme Court, as they have never opined on the topic. It is my opinion that it would be more likely to construe our Arkansas provisions as more expansive in a public property context than when private property is involved. See discussion at p. 13, infra.
The question of to what extent a person may collect signatures on a private university campus entails a slightly different analysis. There seems to be some confusion as to whether the First Amendment speech protections are applicable to private universities. See e.g. State v. Schmid, 84 N.J. 535,423 A.2d 615 (1980), app. dis. 455 U.S. 100 (1982), (stating "[w]e are thus confronted with strong concurrents of policy that must be navigated with extreme care in reaching any satisfactory resolution of the competing constitutional values under the First Amendment in this case. These concerns persuade us to stay our hand in attempting to decide the question of whether the First Amendment applies to Princeton University.") The court than went on to find that the defendant in that case was innocent of trespass charges because under the state constitution, he was exercising a constitutionally protected right.
Under this type of state constitutional analysis, (the type applied in Schmid), the rights of speech, assembly, petition, and the specific initiative and referendum rights granted under state constitutions are weighed against the provision in most state constitutions protecting the ownership of private property. Arkansas Constitution Art. 2, 22 provides as follows:
 The right or property is before and higher than any constitutional sanction; and private property shall not be taken, appropriated or damaged for public use, without just compensation therefor.
It has been stated that one of the essential sticks in the bundle of property rights is the right to exclude others, Kaiser Aetna v. United States, 444 U.S. 164 (1979). Thus, the rights of an individual who wishes to exercise free speech rights on private property, and the right of a private landowner to exclude him, will inevitable clash.
Under the analysis used in Schmid, supra, the court used a balancing test, and weighed the free speech and assembly rights of the defendant against the extent of the private university's property interest. The court held that the test must take into account: 1) the nature and primary use of the property; 2) the extent to which the public is invited to that property; and 3) the purpose of the activity undertaken upon the property in relation to both the private and public use of the property. See also Commonwealth v. State, 495 Pa. 158,432 A.2d 1382 (1981).
One crucial element in the Schmid court's decision to afford protection of the defendant's rights under the state constitution was the holding of the court that the state constitution free speech and assembly protections, unlike their federal counterparts, did not have a "state action" requirement, and that thus ". . . the rights of speech and assembly guaranteed by the State Constitution are protectable not only against governmental or public bodies, but under some circumstances against private persons as well."423 A.2d at 628. The concept has been described as using the state constitutional provision as a sword against another private entity, rather than as a shield against purely governmental action.
It is unclear exactly how our Arkansas Supreme Court would construe our Arkansas Constitution with respect to the collection of signatures on private property, specifically, a private university. It appears to be an absolutely open question in Arkansas. Assuming our Supreme Court found that private property is involved, it would be free to interpret and construe our state constitutional provisions as it sees fit. Attempting to predict what our Supreme Court would hold in such a case would involve the purest form of conjecture.
It should be noted, however, that with respect to the free speech and assembly provisions found at Art. 2, 4 and Art. 2,6 of our Arkansas Constitution, it has been stated that:
 Just as we speak of the first ten Amendments to the United States Constitution as the Bill of Rights. In some instances the said Art. II is a restriction on the Legislature, as when the questioned legislation violates the rights guaranteed in Art. II; but such is not the situation in the case at bar.
Peugh v. Oliger, Admx., 233 Ark. 281, 345 S.W.2d 610 (1961) at 283, n. 6.
Thus there is some authority that our "Bill of Rights", (under which Art. 2, 4 and 6 are found), at least in some instances, is a restriction on the legislature, and not a grant of affirmative rights to private individuals which may be used against other private individuals. Additionally, it is my opinion that the language of Amendment 7 which you have noted, i.e."[n]o law shall be passed", also is intended as a restriction against legislative action. Thus, it is my best legal judgment, based upon these factors, that assuming theFirst Amendment to the United States Constitution grants no constitutional protection for the exercise of initiative and referendum signature collecting on private property, our own state constitutional provisions will likely not either. It is my opinion that these provisions are intended to provide protections against the actions of the government, and not the actions of a private landowner seeking to exclude others from his property. It is also my opinion that the strong language of Art. 2, 22, ("[t]he right of property is before and higher than any constitutional sanction") contributes to this conclusion.
It is therefore my opinion that the question of whether signatures on an initiative or referendum petition may be solicited on a private university campus is a very close one. The courts seem to be unclear as to whether theFirst Amendment is applicable in such situations. See e.g. Schmid, supra. The resolution of the question may depend to a large extent on the particular facts at hand. It is also to be noted that our own Arkansas Supreme Court has not addressed the issue of whether under our own Arkansas Constitution, a right is granted to collect signatures on a private university campus. It is my feeling, however, that if such protection is not afforded under the First Amendment, our Supreme Court would decline to construe our Constitutional provisions as granting such a right. Of course, our court is free to, and will might conclude otherwise.
The next part of your first question involves the collecting of signatures at a state fair, specifically the Arkansas State Fair. It should be noted in this regard that the United States Supreme Court has held that the Minnesota State Fair was a "limited public forum", and that a protected constitutional interest existed in the forum, but was subject to reasonable time, place, and manner restrictions implemented by the state fair authorities. Heffron v. International Society for Krishna Consciousness, 452 U.S. 640 (1981). In that case, the Court upheld a restriction that confined members of the Krishna religion wishing to distribute or sell religious literature, and solicit donations, to a fixed location at the fair. The Court analyzed whether the regulation confining the Krishna to the location was content neutral, served a significant governmental interest, and left open ample alternative channels for communication. The Court also noted that the rule did not vest arbitrary discretion in some authority. We recognize that the Court's decision does not address the protected activity of collecting signatures on initiative or referendum petitions, but believe that the general analysis of the Court is applicable. State Fairs are, under the Court's holding at least "limited public forums" and are subject to the constitutional requirements of theFirst Amendment, except that the fair authorities will have the ability to adopt reasonable time, place and manner restrictions such as confining the constitutionally protected activity to a fixed location at the fair.
Additionally, it is my opinion, although it is a close question, and a novel one in our state, that our own Arkansas Supreme Court would construe our state Constitution as fairly coextensive with these requirements. Our Constitution must provide at least as much protection as the federal constitution (if it is to be upheld), and it may provide more constitutional protection. It is my opinion, however, that our Supreme Court would not construe our state constitution, specifically Art. 2, 4, 6, or Amendment 7, as invalidating reasonable time, place and manner restrictions adopted by the fair authorities, although it is possible that they may be viewed more stringently.
Your next question involves the collecting of signatures on an initiative or referendum petition at "shopping centers/malls". This question has given rise to a bevy of state cases in which the courts attempt to determine whether their own state constitutions grant this right. One of the most recent of these cases, and one which contains a good synopsis of other cases, is Southcenter Joint Venture v. National Democratic Policy Committee, 113 Wn.2d 413,780 P.2d 1282 (1989). Southcenter involved a group who wished to solicit contributions and sell political literature in a privately owner shopping mall. Another Washington case, Alderwood Assoc. v. Washington Environmental Council,96 Wn. 230, 635 P.2d 108 (1981) involved the collecting of signatures on an initiative petition.
The Court in Southcenter first noted that the question of whether an individual has a right to sell political literature and solicit contributions in a private shopping mall must depend upon state law. This conclusion is a result of several U.S. Supreme Court Cases on the topic. Initially, the U.S. Supreme Court held that the First Amendment entitled individuals to picket one of many stores in a shopping mall because the mall was the functional equivalent of a "business block" and for First Amendment purposes must be treated in substantially the same manner. Amalgamated Food Employees Union Local 590 v. Logan Valley Plaza, Inc.,391 U.S. 308 (1968). This reasoning, however, was substantially rejected in Lloyd Corp. v. Tanner, 407 U.S. 551
(1972). Thereafter, in Hudgens v. NLRB, 424 U.S. 507 (1976), the Court held that the First Amendment provides no right to speak, picket, or petition in a privately owned shopping center. Finally, the Court in Pruneyard Shopping Center v. Robins, 447 U.S. 74
(1980) held that a state, (in this case California) could hold under its own state constitution that a protected right existed to collect petition signatures at a privately owned shopping mall without violating the shopping mall owners; federally protected property interests. Thus, under current law, there is no federally protected right to solicit signatures at a privately owned shopping mall, but a state may interpret its own state constitution as conferring this right without running afoul of the federal constitution.
The court in Southcenter, (a case which involved soliciting contributions and selling political literature) held that the free speech provisions of the Washington Constitution were not applicable except in cases of "state action" and thus those provisions of the state constitution could not be used by one private individual against another.
The court, however, specifically held that the decision in Alderwood, supra was undisturbed. In Alderwood, that same state Supreme Court had earlier held that the people have a right under the initiative and referendum provision of the state constitution (not the speech provisions found in the Declaration of Rights) to solicit signatures for an initiative in a manner that does not violate or unreasonably restrict the rights of private property owners. The court pointed out that the initiative provision was not a part of the Declaration of Rights and does not establish a right against the government, but declares that the people are part of the legislative process. 780 P.2d at 1289. This being the case, there was no "state action" requirement under that provision, and the court balanced the competing initiative interests with the private property interests and found in favor of the people's right to the initiative.
With respect to our state constitution, we have already opined that there is authority for the proposition that our "Bill of Rights" is a restriction on legislative action. It is additionally my opinion that our initiative provision, the one you point out, unlike the Washington provision, is a restriction against governmental action, (i.e. "No law shall be passed. . .") The court in Southcenter noted that:
 . . . the position we adopt herein commands the support of the overwhelming majority of courts that have addressed this issue. The highest courts of Connecticut, Michigan, New York, North Carolina, Pennsylvania and Wisconsin have all recently concluded in cases involving similar facts that the free speech provisions of their respective state constitutions do not protect against infringement by private individuals. . . It appears that only the California and New Jersey courts have gone so far as to discover such a right in their state constitutions.
780 P.2d at 1289. See also Cologne v. Westfarms Assoc.,192 Conn. 48, 469 A.2d 1201 (1984); Woodland v. Michigan Citizens Lobby, 423 188, 378 N.W.2d 337 (1985); reh. denied, 424 Mich. 1204
(1986); SHAD Alliance v. Smith Haven Mall,66 N.Y.2d 496, 498 N.Y.S.2d 99, 488 N.E.2d 1211 (1985); State v. Felmet, 302 N.C. 173, 273 S.E.2d 708 (1981); Western Pa. Socialist Workers 1982 Campaign v. Connecticut General Life Ins. Co., 512 Pa. 23, 515 A.2d 1331 (1986); Jacobs v. Major,139 Wis.2d 492, 407 N.W.2d 832 (1987). See also Fiesta Mall Venture v. Mecham Recall Comm., 159 Ariz. 371, 767 P.2d 719
(Ct.App. 1988) review denied (1989). But see, Robins v. Pruneyard Shopping Ctr. 23 Cal.3d 899, 592 P.2d 341,153 Cal.Rptr. 854 (1979), aff'd, 447 U.S. 74 (1981); State v. Schmid, supra, Batchelder v. Allied Stores Int'l, Inc.,388 Mass. 83, 445 N.E.2d 590 (1983); and State v. Cargill,100 Or. App. 336, 786 P.2d 208 (1990), review allowed, 310 Or. 133
(1990).
Of course, it should be noted that if one is to look not just at the portion of Amendment 7 to which you cite, but also to the broad language appearing in the second and third paragraph of that Amendment ("[t]he first power reserved to the people is the initiative", and "[t]he second power reserved to the people is the referendum"), one might conclude that in fact our initiative provisions do grant an affirmative right of the people and thus no "state action" is required with respect to them. Even given this conclusion by our Supreme Court, however, the court in my opinion would still be bound to balance the initiative rights of the people against the property rights of private landowners. This balancing would have to take into account the language of Arkansas Constitution, Art. 2, 22, i.e., "[t]he right of property is before and higher than any constitutional sanction. . . ." In my opinion, under a balancing test, the private property right would likely be deemed superior.
It is thus my opinion, in light of our particular constitutional provisions, that it is unlikely that our Supreme Court would construe them to afford a constitutionally protected right to solicit initiative or referendum signatures in a privately owned shopping mall. Of course, our Supreme Court has never addressed this issue, and is free to interpret our Constitution as it deems appropriate. It is my opinion, however, that in light of the particular wording of our state constitutional provisions, (including the probable necessity of state action, and the strong protection of property interests afforded), that the court would likely find no constitutionally protected right to solicit signatures in a private shopping mall. Of course, the resolution of this question may depend upon the facts of any particular case.
The next part of your first question involves the collecting of initiative or referendum petition signatures at "businesses, hospitals and state agencies". The resolution of the issue as regards these places will depend upon the attendant facts surrounding each. With respect to privately owned places, it is my opinion that as a general matter there is probably no protected constitutional right to collect signatures in such places. Of course, our Supreme Court has not addressed the question, and individual facts would have to be consulted. Even if the particular location is state property, the resolution may depend upon whether the location has been or is used as a "public forum". If it is not a "public forum", the government has much more leeway in restricting access to the area for signature collecting. If the state property or agency can reasonably be characterized as a public forum, then the factors discussed earlier in this opinion should be used in determining whether reasonable time, place and manner restrictions exist. It is possible, though in my opinion unlikely, that our Supreme Court would view such restrictions more stringently under state provisions.
It is my opinion, however, that our Supreme Court would be much more likely to interpret our State Constitution as granting more expansive initiative rights when the issue involves public rather than private property. This conclusion stems from the fact that in these instances the initiative rights would not have to be balanced against an Arkansas private landowner's strongly accorded property rights. See Arkansas Constitution, Art. 2, 22, supra.
One additional factor should be noted with respect to state agencies. Arkansas Code Annotated 7-1-103(2)(B) (Supp. 1989) provides as follows:
 It shall be unlawful for any public officer or public employee of the State of Arkansas or of any county or municipality of this state to circulate an initiative or referendum petition or to solicit signatures on an initiative or referendum petition in any public office of the state, county, or municipal governments of Arkansas or during the usual office hours or while on duty for any state agency or any county or municipal government in Arkansas.
The statute above only proscribes the conduct of public officers and employees, and prohibits them from circulating petitions or soliciting signatures in public offices. It could be argued that this statute violates the provision of Amendment 7 to which you cite. This statute is a "law" which arguably "prohibit[s] the circulation of petitions", and "interferes with the freedom of the people in procuring petitions."
The statute, however, enjoys a presumption of constitutionality, (Stone v. State, 254 Ark. 1011, 498 S.W.2d 634 (1973), and because it only proscribes the conduct of certain individuals in certain places, it is my opinion that it could be found constitutional by our court.
Absent this narrow statutory provision, it is my opinion that the question as to what extent an individual will be allowed to collect initiative or referendum petition signatures will depend, according to First Amendment analysis, upon the nature of the forum and the reasonableness of the time, place and manner restrictions in place. Additionally, it should be noted that the Arkansas Supreme Court, under our State Constitution, could grant expanded rights and in my opinion would be more likely to do so when public property (such as that housing a state agency) is involved.
With respect to your second question (whether the cited provision of Amendment 7 applies to the circulation of nominating petitions for political parties and independent candidates), it is my opinion that the answer to your question is clearly "no". The provisions of the amendment apply to initiatives, that is, enacting laws; and to the referendum, that is, referring laws to the people. Generally, the amendment applies to legislative "measures". That word is defined in the amendment as including any "bill, law, resolution, ordinance, charter, constitutional amendment or legislative proposal or enactment of any character." Nominating petitions and petitions of political parties do not fall within this definition.
It should be noted, however, that these activities, when undertaken in certain places, and under certain conditions, may enjoy U.S. Constitution First Amendment Protection, or protection under a state constitution. See e.g., Batchelder v. Allied Stores Int'l Inc., Supra. But see Western Pa. Socialist Workers 1982 Campaign v. Conn. Gen. Life Ins. Co.,512 Pa. 23, 515 A.2d 1331 (1986). The provisions of Amendment 7 to the Arkansas Constitution, however, are inapplicable.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.
Sincerely,
RON FIELDS Attorney General
RF:arb
[1] Although we discuss this part of your first question separately, we should note that because it is the first part of your first question, several general principles will be set out under this discussion which will have general applicability through this opinion. After the discussion of this first part of your first question, these principles will be referred to in a more summary fashion.
[2] Whether a certain location is a "public forum" is at least to some degree a question of fact.
[3] In Schmid, the defendant, a member of the United States Labor Party, was arrested for trespass while distributing and selling political materials on the main campus of Princeton University.
[4] It should be noted, however, that at least some jurists, including a concurring Justice in Southcenter would hold that the granting of a permanent injunction by a state court constitutes the requisite "state action". 708 P.2d at 1306 (Pearson J. concurring.) Additionally, another justice would hold that the enforcement of the criminal trespass laws of the state when used to protect common law property rights is sufficient "state action." See Schmid, supra,423 A.2d at 635, (Pashman, J., concurring and dissenting in part.)